Ralph McAFEE, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–03–420–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Oct. 26, 2006.

John J. Davis, Attorney At Law, Angleton, for Appellant.

Robinson C. Ramsey, Langley & Banack, San Antonio, Dawn Allison, Asst. District Atty., Josh McCown, District Attorney, Wharton, for Appellee.

## OPINION

Opinion by Justice GARZA.

This Court granted en banc review in this case, as well as in *Patterson v. State,* a separate case that raises a similar and related issue.[1] By four issues, appellant, Ralph McAfee, Sr., challenges his conviction for possession of cocaine. For the following reasons, we overrule appellant's issues and affirm the judgment of the trial court.

## I. Admissibility of Evidence Stemming from Traffic Stop

In his fourth issue, appellant contends that the "trial court erred in admitting the cocaine because the State failed to establish probable cause for the stop of appellant's vehicle." APPELLANT'S BRIEF p. 21. This issue ultimately fails because, among other things, law enforcement does not need "probable cause" to effectuate a traffic stop. *See Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989) ("It is clear that circumstances short of probable cause may justify temporary detention for purposes of investigation.").[2]

1. *See Patterson v. State,* Nos. 13–04–482–CR, 13–04–483–CR, 13–04–484–CR, 2005 Tex. App. LEXIS 8253 (Corpus Christi Oct. 6, 2005).

2. All that the officer needs to conduct an investigatory detention, such as a traffic stop, are specific, articulable facts, which, in light of the officer's experience and general knowledge, together with rational inferences from

The evidence shows the following facts: A police officer observed appellant's vehicle traveling in excess of the posted speed limit. The officer stopped appellant for speeding, but testified that, before the stop, he knew that appellant was suspected of illegal drug activity that had occurred immediately prior to the traffic stop. During the traffic stop, the officer discovered appellant had no proof of insurance for his automobile. A pat-down search of the vehicle's other occupant, who was highly agitated and shaking uncontrollably at the time of appellant's arrest, revealed that the passenger was carrying the cocaine that was later admitted at appellant's trial.

Appellant contends that the traffic stop was improper because there was no evidence that the speedometer in the police cruiser "was in proper working order" when the arresting officer used it to "pace" the speed of appellant's vehicle. APPELLANT'S BRIEF p. 26. As the State's brief points out, speedometer pacing was not the sole basis for the officer's conclusion that appellant was speeding. At trial, the arresting officer explained that he visually observed the rate at which appellant's vehicle was traveling and testified that, based on his training and experience, he was able to determine that appellant's vehicle was traveling at an excessive rate. The officer attempted to catch up to appellant's vehicle and testified that, only then, did he use his speedometer to pace appellant's speed more definitively. Appellant has provided this Court with no authority for holding that these circumstances cannot give rise to a reasonable suspicion of speeding. *See Garza*, 771 S.W.2d at 558. The legality of the officer's actions beyond initiating the traffic stop for speeding has

not been challenged on appeal. Appellant's fourth issue is overruled.

## II. Corroboration of Accomplice and Informant Testimony

■ In his first and second issues, appellant contends that there is insufficient evidence to independently corroborate the testimony of Frank Gonzales, the passenger in his vehicle, who is an accomplice, and the testimony of Jesse Waddy, a police informant.

The code of criminal procedure provides as follows:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX.CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005).

■ Corroborative evidence is sufficient if it "tends to connect" appellant to the offense. *See Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App.1993); *see also Taylor v. State*, 10 S.W.3d 673, 685

---

those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for investigation. *See Gurrola v. State*, 877 S.W.2d 300, 302 (Tex.Crim.App.1994). There

need only be an objective basis for the detention; the subjective intent of the officer is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001).

(Tex.Crim.App.2000). No precise rule has been formulated as to the amount of evidence required to corroborate, but the Texas Court of Criminal Appeals has articulated some basic precepts for our assistance. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App.1996); *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994). The evidence used for corroboration does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim.App.1992). Nor must it directly link the accused to the commission of the offense. *Dowthitt*, 931 S.W.2d at 249; *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Cox*, 830 S.W.2d at 611. While the accused's mere presence in the company of the accomplice or informant before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *See Dowthitt*, 931 S.W.2d at 249; *Gill*, 873 S.W.2d at 49; *Cox*, 830 S.W.2d at 611. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *See Dowthitt*, 931 S.W.2d at 249; *Munoz*, 853 S.W.2d at 559. The absence of "smoking gun" evidence does not invalidate evidence that does connect the defendant to the offense. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex.Crim. App.1999).

Appellant argues that his convictions must be overturned because the corroboration evidence is insufficient:

The cocaine alleged to have been possessed in this case was found in the pant cuff of the accomplice Frank Gonzales. Apart from the testimony of the accomplice Frank Gonzales that Appellant gave him the cocaine when they were being stopped by officers and the testimony of the confidential informant Jesse Waddy that Appellant had shown him the cocaine earlier, police officers could only testify that Appellant was in the presence of Gonzales and Waddy before Gonzales' arrest and with Gonzales at the time the police found cocaine on Gonzales.

[A]ll that the non-accomplice non-informant testimony establishes is that Appellant was in the presence of the accomplice and informant before and/or during the commission of the offense . . . The legal issue is whether the testimony of an informant under Article 38.141 can corroborate the testimony of an accomplice under Article 38.14 [or vice versa].

APPELLANT'S BRIEF pp. 7, 10.

Appellant's first and second issues fail because the independent corroboration evidence—that is, the evidence that requires no corroboration—tends to connect appellant to the offense committed. There is, for one thing, testimony from a detective who witnessed appellant and his accomplice arrive at the scene of a pre-arranged drug transaction. According to the detective's testimony, law enforcement had worked out an arrangement with an informant to lure appellant to the informant's house with drugs for a sale, which the informant would ultimately decline. The plan was designed to catch appellant in possession of the drugs that he had brought to the informant's house. Because law enforcement wanted to keep their informant's identity confidential, they arranged to have a patrol car follow appellant away from the informant's house and develop an independent justification to detain and investigate appellant.

The detective testified that, on the day in question, he visually observed appellant arrive at the informant's house with a passenger who remained in appellant's car. The detective also saw appellant get out of his car and approach the informant, who

was standing in front of the house. The detective watched appellant and the informant have a conversation outside and observed the informant remove his hat, which was a pre-arranged signal that appellant had drugs on him. The detective then watched as appellant returned to his car, where his passenger had remained, and watched as appellant drove away.

There was also testimony from the police officers who interdicted appellant's vehicle as it sped away from the informant's house. As noted above, the arresting officers had reasonable suspicion to stop appellant for speeding, and the legality of their actions beyond initiating the traffic stop has not been challenged on appeal. The officers testified that they immediately developed a second infraction of the law when appellant could not produce valid proof of insurance upon their request. Before any additional police investigations or any interrogations of appellant could occur, the officers discovered contraband on the person of the vehicle's other occupant.

The tends-to-connect standard presents a low hurdle for the State. *See Dowthitt,* 931 S.W.2d at 249; *Munoz,* 853 S.W.2d at 559. After all, the tends-to-connect evidence is unlikely to be the same evidence that proves guilt beyond a reasonable doubt. If the "other evidence" required by the corroboration statute were always sufficient for conviction, there would be no necessity for the State to ever rely on accomplice or informant testimony in the first place.

The corroboration evidence is sufficient in this case. Direct eyewitness testimony from law enforcement agents established appellant's participation in drug-related activities that had been orchestrated and monitored by local law enforcement. Appellant was apprehended almost immedi-

ately after these activities and was discovered to be in close proximity to the drugs at issue. It would be improper to hold such evidence insufficient for corroboration on the grounds that appellant was "merely present" during the commission of the offense because such expressions denote an element of innocent coincidence that is entirely lacking in this case. In other words, this case presents the additional "suspicious circumstances" that, when coupled with "mere presence," are sufficient for corroboration purposes. *See Dowthitt,* 931 S.W.2d at 249; *Gill,* 873 S.W.2d at 49; *Cox,* 830 S.W.2d at 611.

Although the evidence connecting appellant to the offense may not have been enough to convict appellant, it need not rise to such a high threshold for purposes of corroboration. *See Gill,* 873 S.W.2d at 48; *Munoz,* 853 S.W.2d at 559; *Cox,* 830 S.W.2d at 611. Accordingly, appellant's first and second issues are overruled without addressing whether an informant may corroborate an accomplice or vice versa, as that determination would have no effect on the outcome of the case. *See* Tex.R.App. P. 47.1.[3]

### III. Cross–Examination

■ In his third and final issue, appellant contends that the trial court erred by sustaining the State's objection to a question regarding specific violations of the law that the informant committed while on probation. Appellant points out that the informant's credibility as a witness was hotly contested at trial. According to appellant, the trial court's refusal to allow the informant to be questioned about his recent violations of the law prevented appellant from impeaching the informant's credibility as a witness. In particular, appellant argues that he was wrongfully thwarted by the trial court in attempting

---

**3.** *See Patterson v. State,* Nos. 13–04–482–CR, 13–04–483–CR, 13–04–484–CR (discussing cross-corroboration and the meaning of "other evidence" under corroboration statutes).

to prove that the informant had a motive for cooperating with law enforcement, and perhaps for offering perjured testimony, because he was on probation and had committed violations of the law that could cause his probation to be revoked.

Before the objected-to question, appellant's trial counsel asked the informant whether he had violated the law in the seven years he had been on probation, and the informant answered in the affirmative. Counsel then asked, "So, what other violations of the law have you had?" The State objected to the question as "improper impeachment," and after an off-the-record discussion, the trial court sustained the objection.

 Although the record reflects that the State's objection to this line of questioning was sustained, there is no indication in the record that appellant attempted to make an offer of proof. Error may not be predicated upon a ruling which excludes evidence unless the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked. *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App.1998). An offer of proof may be in question-and-answer form, or it may be in the form of a concise statement by counsel. *Id.*; *Love v. State*, 861 S.W.2d 899, 901 (Tex.Crim.App.1993).

It is apparent from the record that the informant had a criminal history. It is also equally apparent that appellant explored this criminal history at trial through cross-examination testimony that focused on the informant's current proba-

tion, past drug use, current drug testing, and prior criminal offenses. Through questioning, appellant established that the informant had committed violations of the law while on probation and that, nevertheless, no motions to revoke his probation had been filed by the State. This is the very fact that appellant now claims he wanted to use to impeach the informant's credibility. Because this fact was testified to in open court, there is no basis for sustaining appellant's third issue. *See* Tex.R.App. P. 44.2. The absence of an offer of proof also prevents this Court from ascertaining whether or to what extent the proposed testimony would have further developed this ground for impeachment. Accordingly, the issue is overruled.

The judgment of the trial court is affirmed.

Concurring Opinion by Justice ERRLINDA CASTILLO.

Dissenting Opinion by Justice LINDA REYNA YAÑEZ.

Concurring Opinion by Justice CASTILLO.

I agree with the majority that the judgment of the trial court should be affirmed. Because I apply a different analysis, I respectfully concur.

## I. BACKGROUND

The offense is possession of cocaine, enhanced; the punishment, eighteen years imprisonment. The hypothetically correct jury charge authorizes a conviction on a principal or party theory.[1] We may sus-

---

1. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* A hypothetically correct jury

charge would not simply quote from the controlling statute. *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex.Crim.App.2001). Its scope is limited by "the statutory elements of the offense . . . as modified by the charging instrument." *Fuller v. State*, 73 S.W.3d 250, 254 (Tex.Crim.App.2002) (Keller, P.J., concurring) (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App.2000)).

tain on either theory.[2] The crux of Ralph McAfee's appellate argument is that mere presence is not enough to sustain his conviction.[3]

## II. APPLICABLE LAW

The standard of review is legal sufficiency of the evidence that turns on an application of the accomplice witness rule and the confidential informant rule. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Poindexter v. State,* 153 S.W.3d 402, 405–06 (Tex.Crim. App.2005); *Brown v. State,* 911 S.W.2d 744, 748 (Tex.Crim.App.1995). This determination is made on a case-by-case basis and in light of the totality of the circumstances. *See Humason v. State,* 728 S.W.2d 363, 367 n. 12 (Tex.Crim.App.1987); *Porter v. State,* 873 S.W.2d 729, 732 (Tex. App.-Dallas 1994, pet. ref'd) (affirmative links are established by a totality of the circumstances test). The jury, as trier of facts, is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic to ultimate facts. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App. 1984). The jury is the exclusive judge of the credibility of the witnesses and the

weight to be given their testimony. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991). Thus, the jury is free to accept or reject any or all of the evidence presented by either side. *Id.* When faced with conflicting evidence, we presume the trier of facts resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993).

The requirement that accomplice testimony must be "corroborated by other evidence tending to connect the defendant with the offense committed" is identical to the requirement that covert witness testimony must be "corroborated by other evidence tending to connect the defendant with the offense committed." TEX.CODE CRIM. PROC. ANN. arts. 38.14 & 38.141 (Vernon 2005); *Jefferson v. State,* 99 S.W.3d 790, 793 (Tex.App.-Eastland 2003, pet. ref'd) (citing *Hernandez v. State,* 939 S.W.2d 173, 178 (Tex.Crim.App.1997)). The ultimate consequence of our analysis is that the defendant must still be affirmatively linked with the contraband he allegedly possessed. *See Brown,* 911 S.W.2d at 748; *Poindexter,* 153 S.W.3d at 406.

Measured against the hypothetically correct jury charge as limited by the indict-

**2.** McAfee has not challenged the sufficiency of the evidence on either a principal or party theory. *See* TEX.R.APP. P. 38.1(e), (h) (brief must state concisely all issues presented for review and must contain clear and concise argument for contentions made, with appropriate citations to authorities and record, respectively). Thus, if evidence of guilt is sufficient, the reviewing court will affirm the verdict based on either theory. *See Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim.App. 1992) (en banc); *Edwards v. State,* 106 S.W.3d 833, 839 (Tex.App.-Dallas 2003, pet. ref'd) (if evidence of guilt is sufficient either as principal or as party, appellate court must affirm jury's verdict); *see also Kitchens v. State,* 823 S.W.2d 256, 259 (Tex.Crim.App. 1991). In determining whether a defendant participated in an offense as a party, the reviewing court may examine the events occur-

ring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex. Crim.App.1994). Intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the accused. *Patrick v. State,* 906 S.W.2d 481, 487 (Tex. Crim.App.1995).

**3.** Mere presence at the scene of the crime is not alone sufficient to prove that a person is a party to the offense, although it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987).

ment, the essential elements of unlawful possession of a controlled substance are that McAfee had (1) actual care, control, custody and management over the contraband, and (2) knowledge that the substance was cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (Vernon 2003); *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *Poindexter,* 153 S.W.3d at 405; *Taylor v. State,* 106 S.W.3d 827, 830 (Tex.App.-Dallas 2003, no pet.). Control over the contraband need not be exclusive and can be jointly exercised by more than one person. *See McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App. 1985); *Aldridge v. State,* 482 S.W.2d 171, 174 (Tex.Crim.App.1972); *Taylor,* 106 S.W.3d at 831. "[W]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *See Poindexter,* 153 S.W.3d at 406 (quoting *Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim.App. 1981)). Whether evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Poindexter,* 153 S.W.3d at 406 (quoting *Brown,* 911 S.W.2d at 747).

## III. SUFFICIENCY ANALYSIS

McAfee does not raise Fourth Amendment challenges[4] or an entrapment defense.[5] Unobjected to at trial and unchallenged on appeal, testimony from three law enforcement officers demonstrates that McAfee and his vehicle were targets of a covert operation for possession of contraband. Law enforcement set up a procedure whereby a covert agent would meet with McAfee at a predetermined location for the sole purpose of, and ostensibly to transact, a cocaine buy. Law enforcement instructed the covert agent not to buy. Although unrecorded, the planned meeting between the covert agent and McAfee occurred while under law enforcement surveillance. The detective observed McAfee arrive, in what was commonly and already known to be his vehicle, at the planned location and communicate with the covert agent. As part of the covert operation, assisting officers were to stop McAfee's vehicle, on independent probable cause, upon McAfee's leaving the controlled meeting.[6] In furtherance of the operation in place, assisting officers were

---

4. *See* U.S. CONST. amend. IV; *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

5. The issue of entrapment is not raised where the facts indicate that the criminal design originated only in the mind of the accused and law enforcement merely furnished the opportunity or aided the accused in the commission of the crime. *Lopez v. State,* 574 S.W.2d 563, 565 (Tex.Crim.App.1978).

6. One of the assisting officers, patrolman Walter Jameson, testified as follows on cross-examination:

 [Defense Counsel]: Okay. The purpose of the car being stopped that day was to effect the search, correct?

 [Prosecutor]: I'm going to object. It's speculative.

 The Court: He can answer if he knows.

 [Defense Counsel]: I mean, you know?

 [Officer Jameson]: I was told that we were looking at a drug deal that was going down.

 On the prosecutor's re-direct examination, Officer Jameson further testified as follows:

 [Prosecutor]: So, you couldn't stop them because you knew they had drugs on them? You had to h ave a reason to—or excuse me—Officer Hernandez did?

 [Officer Jameson]: There had to be a valid reason for the stop, yes.

informed that McAfee and his vehicle were targets in a covert operation for possession of contraband. After the traffic stop, assisting officers searched McAfee's invitee and sole passenger, Franky Gonzalez, and found the contraband on Gonzalez's rolled-up pants leg. Officers recognized Gonzalez from his history of prior arrests and offenses, none involving a controlled substance.

Viewed in the proper light and through the prism of the accomplice- and confidential-informant rules, the evidence supports a jury verdict that McAfee and Gonzalez were acting together, each contributing some part toward the execution of their common purpose of knowing or intentional possession of the cocaine.[7] More than just fortuitous, the totality of the circumstances affirmatively linked McAfee with the contraband.[8] *See Poindexter*, 153 S.W.3d at 405–06; *Porter*, 873 S.W.2d at 732. Thus, non-accomplice and non-confidential-informant testimony provide the affirmative links sufficient to sustain the conviction on a party theory of culpability. *Poindexter*, 153 S.W.3d at 405–06. Consequently, a rational trier of facts could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 406. I conclude the evidence is legally sufficient. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Poindexter*, 153 S.W.3d at 408; *Brown*, 911 S.W.2d at 748; *Aldridge*, 482 S.W.2d at 174.

### IV. CONCLUSION

Guided by the *Poindexter* construct, I conclude that the affirmative links are sufficient-independent and exclusive of the accomplice and confidential informant testimony. I therefore concur with the judgment of this Court.

### Dissenting Opinion by Justice YAÑEZ.

The majority affirms appellant's conviction because it concludes there is independent evidence requiring no corroboration that "tends to connect" appellant to the offense. Specifically, the majority identifies (1) Officer Ross Gonzales's testimony that he observed appellant and his accomplice, Frank Gonzales (Franky) arrive at Jesse Waddy's (the confidential informant's) residence in accordance with a proposed drug transaction pre-arranged by Waddy and police officers, and (2) appellant was apprehended immediately thereafter "in close proximity" to the drugs. I would hold that neither constitutes evidence "tending to connect" appellant with the offense and would order appellant acquitted of all charges. Accordingly, I respectfully dissent.

### I. Background

On September 24, 2002, a confidential informant, Waddy, called Grady Smith, a City of Wharton police officer, with information regarding an impending drug transaction. Officer Smith, who was out of town when he received the call, referred Waddy to Detective Ross Gonzales. Gonzales learned that appellant was to bring some crack cocaine to Waddy's house. Gonzales testified that he had "not even ten minutes" to make the arrangements.

---

**7.** *See Ransom*, 920 S.W.2d at 302; *Patrick*, 906 S.W.2d at 487; *Rabbani*, 847 S.W.2d at 558.

**8.** The State need not prove that the defendant had sole possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the contraband and constructively possessed it. *See Poindexter v. State*, 153 S.W.3d 402, 412 (Tex.Crim.App.2005). In sum, there is no evidence that would support a conclusion that McAfee was an innocent bystander to someone else's drug possession given the totality of the circumstances in this case. *See id.*

Gonzales testified that he and Waddy agreed that if Waddy saw that appellant had drugs in the car, he was to signal the police by taking off his hat when appellant left. Gonzales testified that he and another officer, Detective Lynch, set up surveillance on Waddy's residence. He also testified that he alerted patrol officers and arranged for them to try and make a traffic stop of appellant's vehicle. According to Gonzales, the police did not want to arrest appellant at Waddy's residence because they wanted to protect Waddy's identity as a confidential informant. Gonzales testified that he saw appellant arrive at Waddy's house and speak to Waddy outside in the yard. Gonzales testified that a passenger in appellant's vehicle, Franky (also known as "Chauchi"), stayed in the vehicle. Gonzales recognized Franky as someone who had been arrested on several occasions for public intoxication. Officers Gonzales and Lynch saw Waddy give the agreed-upon signal after appellant's vehicle left the house.

Officer Lupe Hernandez testified that he "paced" appellant's vehicle with his patrol car and stopped appellant for traveling at forty miles per hour in a thirty-mile-per-hour zone. Officer Hernandez activated his vehicle's lights and appellant pulled over. After appellant produced an expired insurance card, Officer Hernandez arrested him. Officer Hernandez performed a pat-down search of appellant and an inventory search of the vehicle because it was going to be towed.[1] Several other officers arrived at the scene, including Officer Walter Jameson. Officer Hernandez testified that Franky was shaking, sweating, and extremely nervous. Officer Jameson performed a pat-down search on Franky and found cocaine in the cuff of his sweat pants. Appellant and Franky were both charged with possession of cocaine.[2]

Appellant did not testify at trial and the defense offered no witnesses. The State presented testimony by Officers Smith and Gonzales, Officers Jameson and Hernandez (both involved in the traffic stop and arrest), Waddy, and Franky. At the close of the State's case, appellant's counsel requested an instructed verdict on grounds that the State had failed to provide evidence corroborating either Franky's testimony, as an accomplice witness, or Waddy's testimony, as a confidential informant. Counsel argued that neither witness's testimony could corroborate the other because "you can't take unreliable information and corroborate it with other unreliable information." The State argued that as a confidential informant, Waddy's testimony "does not need to be corroborated." The trial court overruled appellant's motion for instructed verdict. The jury found appellant guilty.[3] This appeal ensued.

1. Officer Hernandez testified that he could not release the vehicle to Franky, the passenger, because he did not have a driver's license.

2. It is undisputed that Franky is an accomplice. See *Badillo v. State*, 963 S.W.2d 854, 857 (Tex.App.-San Antonio 1998, pet. ref'd) ("If a witness has been indicted for the crime, he or she is an accomplice as a matter of law.").

3. The court's charge stated, in pertinent part:
 The witness, Frank Gonzales, is an accomplice, if an offense was committed, and you cannot convict the defendant upon his testimony unless you first believe that his testimony is true and shows that the defendant is guilty as charged and even then you cannot convict unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged. The witness, Jesse Waddy[,] is a person who is not a licensed peace officer or investigator but was acting covertly on behalf of a law enforcement agency. You cannot convict the defendant upon said testimony unless you further believe that there is other testimony in the case,

## II. Standard of Review and Applicable Law

In his first issue, appellant contends the evidence is insufficient to corroborate Franky's testimony as an accomplice witness as required by the accomplice witness rule.[4] In his second issue, appellant contends the evidence is insufficient to corroborate Waddy's testimony as a confidential informant as required by the confidential informant statute.[5]

### A. Accomplice Witness Rule

Appellant argues that Franky's accomplice witness testimony must be corroborated by "other evidence" and cannot be corroborated by the testimony of a confidential informant. The State argues that "no prohibition exists against an accomplice corroborating an informant or vice versa." The State contends that Franky's accomplice witness testimony is independently corroborated by Waddy's confidential informant testimony. Moreover, the State contends that even without Waddy's testimony, there was sufficient non-accomplice testimony tending to connect appellant to the crime because (1) appellant was present at the time and place of the offense, (2) the cocaine was found on a passenger in a car that appellant owned and

was driving, and (3) appellant was in close proximity to the passenger at the time of the commission of the offense.

The accomplice-witness rule provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.[6]

In conducting a sufficiency review under the accomplice-witness rule, a reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.[7] "Tendency to connect" rather than rational sufficiency is the standard: the corroborating evidence need not be sufficient by itself to establish guilt.[8] "The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which tends to connect the accused to the commission of the offense alleged in the indictment."[9] No precise rule can be formulated regarding the amount of evidence that is required to corroborate the testimony of an accomplice witness; each case must be judged on its own facts.[10] The "tends-to-

---

*outside of the evidence of Frank Gonzales and Jesse Waddy* [,] tending to connect the defendant with its commission, the corroboration is not sufficient if it merely shows the commission of the offense, but it must also tend to connect the defendant with its commission and then from all of the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him. (Emphasis added).

4. *See* Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

5. *See* Tex.Code Crim. Proc. Ann. art. 38.141(a), (b) (Vernon 2005).

6. Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App.2001).

7. *Solomon*, 49 S.W.3d at 361.

8. *Id.* (citing *Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999)).

9. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim.App.1999) (quoting *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997) (emphasis in original)).

10. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim. App.1994).

connect" standard does not present a high threshold.[11] Even insignificant circumstances may satisfy the test.[12] If, however, the corroborating evidence does no more than point the finger of suspicion towards the accused, it is insufficient to satisfy the requirements of article 38.14.[13] One accomplice witness's testimony may not corroborate the testimony of another accomplice witness.[14] While the accused's mere presence at the scene of the crime is insufficient, by itself, to corroborate accomplice witness testimony, "evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense."[15] The accomplice-witness rule is not based upon federal or state constitutional notions of sufficiency; there simply needs to be "other" evidence tending to connect the defendant to the offense.[16]

The State's failure to sufficiently corroborate accomplice testimony in accordance with the statute results in the remedy of acquittal.[17] This result is not required by the federal constitution, but by state statute: "In all cases where, by law, two witnesses, *or one with corroborating circumstances*, are required to authorize a conviction, *if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction*."[18]

## B. Confidential Informant Statute

Similarly, the legislature has decided that a defendant may not be convicted by the statements of a confidential informant unless that testimony is corroborated:

(a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.[19]

Several courts, including this Court, have concluded that by enacting substantially the same language in article 38.141 as in article 38.14, the legislature intended the same standard for corroboration to apply to accomplice witnesses and confidential informants.[20] Courts have ac-

11. *See Cantelon v. State*, 85 S.W.3d 457, 461 (Tex.App.-Austin 2002, no pet.).

12. *See id.*

13. *Nolley v. State*, 5 S.W.3d 850, 853 (Tex. App.-Houston [14th Dist.] 1999, no pet.).

14. *Badillo*, 963 S.W.2d at 857.

15. *Trevino*, 991 S.W.2d at 851–52 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim.App.1996)).

16. *Solomon*, 49 S.W.3d at 361 (citing *Cathey*, 992 S.W.2d at 462–63).

17. *Cathey*, 992 S.W.2d at 463 n. 2.

18. *Id.* (quoting TEX.CODE CRIM. PROC. ANN. art. 38.17 (Vernon 2005) (emphasis in *Cathey*)).

19. TEX.CODE CRIM. PROC. ANN. art. 38.141(a), (b) (Vernon 2005).

20. *See, e.g., Brown v. State*, 159 S.W.3d 703, 707 (Tex.App.-Texarkana 2004, pet. ref'd); *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.-Houston [1st Dist.] 2004, no pet.); *Jefferson v. State*, 99 S.W.3d 790, 793 (Tex.App.-Eastland 2003, pet. ref'd); *Campos v. State*, No. 13–02–359–CR, 2003 WL 22964311, at *2, 2003 Tex.App. LEXIS 10614, *5 (Tex.App.-Corpus Christi Dec. 18, 2003, pet. ref'd) (not designated for publication); *Cantelon*, 85 S.W.3d at 460; *Young v. State*, 95 S.W.3d 448, 450–51 (Tex.App.-Houston [1st Dist.]

knowledged that the purpose of the corroboration requirement in article 38.14 is to ensure that a conviction rests upon more than just the testimony of an accomplice because an accomplice may have a selfish incentive to be untruthful, such as to avoid or lessen punishment or to shift the blame to another person.[21] Similarly, courts have recognized that confidential informants often work with police for self-interested reasons and "generally have an incentive or hope for personal gain," such as monetary compensation or dismissal of pending charges.[22] Accordingly, courts have applied the same corroboration standard to article 38.141.[23]

## III. Analysis

Appellant asserts that the issue of whether an informant's testimony under article 38.141 can corroborate an accomplice witness's testimony under article 38.14 is "an issue of first impression." However, since appellant's brief was filed, this Court has addressed this question.[24] In *Patterson*, this Court found that "the code of criminal procedure places no restrictions on the use of informant testimony to corroborate accomplice testimony or

vice versa."[25] Based on the absence of an express statutory prohibition against the use of informant testimony to corroborate accomplice testimony and vice versa, this Court concluded that "an accomplice may corroborate the testimony of an informant and an informant may corroborate the testimony of an accomplice."[26]

On May 6, 2006, this Court granted appellant Patterson's motion for rehearing *en banc* to reconsider the issue of whether an informant's testimony can be used to corroborate accomplice testimony and vice versa.[27] Accordingly, I turn to reconsideration of the issue.

In *Blake v. State*, the court of criminal appeals explained the purpose of the accomplice witness rule:

The heart of the accomplice witness rule is the legislature's inherent suspicion and belief in the untrustworthiness of the accomplice's testimony.

The rule's roots can be traced to common law, where interested parties were precluded from testifying in both criminal and civil cases— "fear of perjury was the reason for this rule." The United States Supreme Court recognized

2002, pet. ref'd) ("In interpreting the meaning of article 38.141, we must assume that the legislature was aware of case law interpreting the similar language used in article 38.14.").

**21.** *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim.App.1998); *Young*, 95 S.W.3d at 451; *Cantelon*, 85 S.W.3d at 460.

**22.** *Cantelon*, 85 S.W.3d at 460; *see Young*, 95 S.W.3d at 451 (stating that "confidential informants may have incentives to create criminal cases or shade their testimony in favor of the State in the hope that they will be rewarded with greater leniency later on.").

**23.** *See Brown*, 159 S.W.3d at 707; *Torres*, 137 S.W.3d at 196; *Jefferson*, 99 S.W.3d at 793; *Campos*, 2003 WL 22964311, at *2, 2003 Tex.

App. LEXIS 10614, at *5; *Young*, 95 S.W.3d at 451; *Cantelon*, 85 S.W.3d at 460.

**24.** *Patterson v. State*, Nos. 13–04–482–CR, 13–04–483–CR, 13–04–484–CR, 2005 Tex.App. LEXIS 8253 at *16 (Tex.App.-Corpus Christi Oct. 6, 2005, no pet. h.), *reh'g en banc granted*.

**25.** *See id.*

**26.** *See id.*

**27.** On May 31, 2006, *Patterson v. State* and the present cause were resubmitted to this Court *en banc*. Upon reconsideration, a majority of this en banc Court has issued its opinion in *Patterson* this same date. *See Patterson v. State*, Nos. 13–04–482–CR, 13–04–483–CR, 13–04–484–CR, 204 S.W.3d 852, 2006 WL 3078764 (Tex.App.-Corpus Christi Oct. 26, 2006, no pet. h.).

that the basis of such rules was to set aside a class of persons who were more likely to commit perjury than other witnesses.

This suspicion and fear of perjury is not without reason. Accomplices often strike bargains with the state, where the prosecutor agrees to a favorable sentencing recommendation in exchange for the accomplice's testimony against another person. Courts have recognized that a plea bargain contains a degree of compulsion. In addition, those accused of crimes tend to try to place the responsibility for the commission of the crime on the other participants while downplaying their own participation, often in order to avoid the consequences of criminal acts. For these reasons, and to protect the criminal defendant in each case, the legislature has determined that uncorroborated testimony of an accomplice is not enough to support a criminal conviction.[28]

Article 31.141 was enacted by the Texas Legislature and became effective September 1, 2001.[29] "Similar to the concerns raised by accomplice witness testimony, covert witnesses may have incentives to lie or shade their testimony in favor of the state, which requires such testimony to be viewed with a measure of caution."[30] "In interpreting the meaning of article 38.141, we must assume that the legislature was aware of case law interpreting the similar language used in article 38.14."[31]

In determining whether there is "other evidence" tending to connect an accused with the offense under article 38.14, I agree with appellant that the "other evidence" used to corroborate accomplice witness testimony cannot include uncorroborated confidential informant testimony. I conclude that uncorroborated confidential informant testimony is not "evidence" (unless independently corroborated), and thus, cannot constitute "other evidence" under the accomplice witness statute. Similarly, I conclude that uncorroborated accomplice witness testimony is not "evidence" (unless independently corroborated), and thus, cannot constitute "other evidence" under the confidential informant statute.

Moreover, I conclude that the rules governing statutory construction support my conclusion. In construing a statute, we look first to the literal language, for that is

---

**28.** *Blake,* 971 S.W.2d at 460; *see Reyna v. State,* 22 S.W.3d 655, 658 (Tex.App.-Austin 2000, no pet.) (accomplice witness rule is intended to minimize the danger that an accomplice's self-interest might motivate him to falsely implicate others in order to deflect blame and punishment from himself); *Howard v. State,* 972 S.W.2d 121, 125 (Tex.App.-Austin 1998, no pet.) (accomplice witness rule requires the jury to receive and act upon accomplice witness testimony with caution, considering the selfish interests and possibly corrupt motives of the witness); *McDuff v. State,* 943 S.W.2d 517, 520 (Tex.App.-Austin 1997, pet. ref'd) (noting "an accomplice witness is a discredited witness whose testimony should be received, viewed, and acted upon with caution because of any interest the witness may have and because it is considered evidence from a corrupt source."); *Tran v.*

*State,* 870 S.W.2d 654, 658 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (purpose of accomplice evidence rule is to assure that a jury does not consider accomplice evidence unless the jury finds both that the accomplice is telling the truth and that other evidence corroborates the accomplice).

**29.** *See* Acts 2001, 77th Leg., ch. 1102, § 1.

**30.** *Brown,* 159 S.W.3d at 707 (citing *Young,* 95 S.W.3d at 451).

**31.** *Young,* 95 S.W.3d at 451 (citing *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) ("[a] statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.")).

the best indicator of the legislative intent.[32] "If that language is clear and unambiguous, the plain meaning of those words is applied."[33] "But if the plain language leads to absurd results that the Legislature could not possibly have intended, or if the language is ambiguous, we may consider extra-textual factors to determine the statute's meaning."[34]

Here, the plain language of each statute requires corroboration by "other evidence tending to connect the defendant with the offense committed."[35] As noted above, I must assume that, in enacting article 38.141, "the legislature was aware of case law interpreting the similar language used in article 38.14."[36] Although the statute does not define "other evidence" or otherwise qualify the term, I conclude that the legislature could not have intended it to include inherently suspect evidence that "should be viewed with a measure of caution."[37]

I address appellant's first issue by eliminating the accomplice witness testimony of Franky to determine "whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the offense."[38] If the "other evidence" is insufficient to tend to connect appellant to the offense, I next address appellant's second issue by eliminating the confidential informant (Waddy's) testimony to determine "whether the other inculpatory facts and circumstances in evidence tend to con-

nect appellant to the offense."[39] If, under both analyses, the "other evidence tending to connect" appellant to the offense is insufficient, I must order the appellant acquitted.[40]

I first eliminate Franky's testimony and examine the other witnesses' testimony for evidence that tends to connect appellant to the offense.[41] Officer Gonzales testified that (1) he saw appellant arrive at Waddy's house and speak to him in the yard (which corroborates Waddy's testimony that appellant came to his house to sell him crack cocaine); (2) he saw Franky was a passenger in appellant's vehicle, but stayed in the car during appellant's conversation with Waddy (which corroborates Waddy's testimony that Franky was present but stayed in the car); and (3) when appellant left, he saw Waddy give the agreed-upon signal that meant appellant had drugs in the car (which corroborates Waddy's testimony that he gave the pre-arranged signal to the police that appellant had drugs in his possession). Gonzales testified that the only time he uses a "wire" on an informant is during an investigation of a delivery case. He did not have a "wire" on Waddy in this case because it was a possession case. Gonzales testified that the first time he saw the drugs in this case was after appellant and Franky had been arrested. Eliminating Franky's testimony, the only testimony that appellant had crack cocaine in his possession is Waddy's testimony that he did. Thus, eliminating Franky's testi-

32. *Getts v. State,* 155 S.W.3d 153, 155 (Tex. Crim.App.2005) (citing *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991)).

33. *Id.*

34. *Id.*

35. *See* Tex.Code Crim. Proc. Ann. arts. 38.14, 38.141(a), (b) (Vernon 2005).

36. *Young,* 95 S.W.3d at 451.

37. *See Blake,* 971 S.W.2d at 454.

38. *McDuff v. State,* 939 S.W.2d 607, 612 (Tex. Crim.App.1997) (citing *Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Crim.App.1993)).

39. *See id.*

40. *See* Tex.Code Crim. Proc. Ann. art. 38.17 (Vernon 2005); *Young,* 95 S.W.3d at 451.

41. *See McDuff,* 939 S.W.2d at 612.

mony, Waddy's testimony that appellant had possession of the cocaine is not corroborated. After eliminating Franky's testimony from consideration, I find that the corroborating evidence fails to connect appellant to the offense. I would sustain appellant's first issue.

I next eliminate from consideration Waddy's testimony and examine the other witnesses' testimony for evidence that tends to connect appellant to the offense. Officer Jameson testified that (1) at the traffic stop, Franky was "really nervous" and "shaking uncontrollably," (which corroborates Franky's testimony that he was shaking because he was scared and nervous); (2) because Franky was "sweating profusely" and "generally acting like there was something wrong," Jameson pat-searched him a second time and found cocaine in the cuff of his sweat pants (which corroborates Franky's testimony that he was scared because when the police vehicle activated its lights, he had put what he knew was crack cocaine in the crotch area of his pants). Significantly, Franky's testimony that when the police vehicle activated its lights, appellant handed him the cocaine and told him to put it in his pants, was not corroborated by any evidence other than Waddy's uncorroborated testimony that appellant had drugs in his possession when he left Waddy's residence.

The State also argues that even if Waddy's testimony is eliminated from consideration, there was sufficient non-accomplice evidence tending to connect appellant to the crime because (1) appellant was present at the time and place of the offense, (2) the cocaine was found on a passenger in a car that appellant owned and was driving, and (3) appellant was in close proximity to the passenger at the time of the commission of the offense. I disagree.

It is well-settled that the mere presence of the accused in the company of an accomplice during the commission of a crime is not, by itself, sufficient to corroborate accomplice testimony.[42] In *Rios*, the San Antonio Court of Appeals held the State presented insufficient evidence "tending to connect" the crime to a passenger present in a car which contained marihuana.[43] *Rios* stands for the proposition that, absent any other "suspicious circumstances," mere presence at the scene is insufficient to corroborate accomplice witness testimony.[44] Texas courts have held that "suspicious circumstances" can include nervous and furtive behavior.[45] For example, in *Hill v. State*, the police followed a vehicle based on an informant's tip and pulled it over.[46] Upon questioning, the front-seat passenger produced cocaine, which she had been hiding in her underwear.[47] The front-seat passenger told the police that the cocaine belonged to the appellant (back-seat passenger), who had given it to her and asked her to hide it when the police began to follow their vehicle.[48] Both were arrested.[49]

**42.** *See Rios v. State*, 982 S.W.2d 558, 560 (Tex.App.-San Antonio 1998, pet. ref'd) (citing *Dowthitt*, 931 S.W.2d at 249).

**43.** *Id.* at 561 (holding the glance the driver gave to the passenger was not evidence of nervous or furtive behavior on the part of the passenger).

**44.** *Id.* at 560–61.

**45.** *See Brown v. State*, 672 S.W.2d 487, 489 (Tex.Crim.App.1984) (appearing to panic, driving away from police, and other suspicious circumstances); *Hill v. State*, 832 S.W.2d 724, 726 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (engaging in furtive behavior inside vehicle consistent with attempting to hide or dispose of something).

**46.** *Hill*, 832 S.W.2d at 725.

**47.** *Id.*

**48.** *Id.*

Eliminating the front-seat passenger's accomplice witness testimony, the court found that appellant's presence, plus the officers' observation of suspicious behavior inside the vehicle, provided sufficient corroboration of the accomplice witness's testimony.[50] The officers testified that they saw appellant engage in furtive gestures as they followed the suspect vehicle.[51] One officer testified that he saw appellant move sideways and lean over the front seat toward the side of the car where the front-seat passenger was sitting.[52] The other officer testified that there was a lot of movement in the vehicle, "primarily from the back to the front," and that the appellant's movements were consistent with someone trying to hide or dispose of something.[53]

Here, the officers did not testify that they observed any movement or furtive gestures inside the car consistent with Franky's testimony that appellant handed him the cocaine. The officers did not testify that appellant was nervous. Other than appellant's presence at the scene, there were no other "suspicious circumstances" tending to connect appellant to the offense.

Eliminating Waddy's testimony, Franky's testimony that appellant gave him the cocaine is not corroborated. After eliminating Waddy's testimony from consideration, I find that the corroborating evidence fails to connect appellant to the offense. I would sustain appellant's second issue.

### Response to Majority

The majority concludes there is independent evidence requiring no corroboration that "tends to connect" appellant to the offense. Specifically, the majority identifies (1) Officer Gonzales's testimony that he observed appellant and his accomplice (Franky) arrive at Waddy's (confidential informant's) residence in accordance with a proposed drug transaction pre-arranged by Waddy and police officers, and (2) appellant was apprehended immediately thereafter "in close proximity" to the drugs. I am unpersuaded that either constitutes evidence "tending to connect" appellant with the offense for the following reasons.

With regard to the "narcotics investigation" involving appellant, Gonzales testified:

[Gonzales]: Okay. During the course of this narcotics investigation, me and Waddy spoke and the deal was whenever McAfee got to his house, if he [Waddy] saw the dope in the car, he was going to take his hat off as a signal when he [McAfee] drove off.

As to the particulars of the "narcotics investigation," Gonzales testified:

[Appellant's counsel]: … When you did the—how much notice did you have ahead of time that the Defendant was going to be at Jesse Waddy's house?

[Gonzales]: Not very long at all.

[Counsel]: Approximately how long?

[Gonzales]: I believe Detective Smith called me. It was just spur of the moment, and I probably maybe had not even ten minutes to gather everybody up and get everything ready.

[Counsel]: Is that about ten minutes from the time the Defendant advised you—excuse me—Jesse Waddy was at his residence and the Defendant was on his way?

49. *Id.*

50. *Id.* at 726.

51. *Id.*

52. *Id.*

53. *Id.*

[Gonzales]: Right.

Waddy testified that he contacted Officer Smith and was referred to Detective Gonzales. Waddy also testified that he called appellant around 9:00 a.m. and told appellant he wanted to purchase two ounces of cocaine. According to Waddy, when appellant did not come, he called back and appellant was not home. At that point, Waddy left a message for appellant. According to Waddy, the arrangements for appellant to come to Waddy's house were made during a third phone call. Although Waddy's testimony does not reflect how much time transpired between the first phone call at 9:00 a.m. and appellant's visit to the house, Officer Jameson testified that he began his shift at 2:15 p.m. and was advised of the proposed transaction by Gonzales. Significantly, *all* of the information—the proposed drug transaction, the set-up, the hat signal indicating the presence of drugs—came from Waddy. Officer Gonzales was contacted at the last moment and was invited to observe the "transaction" that had been arranged by Waddy. On voir dire, Waddy testified that he licked and smelled the substance appellant brought to the house to determine it was cocaine. Although Gonzales testified he was able to watch the conversation between Waddy and appellant, he did not testify that he observed Waddy licking or smelling any substance. Gonzales testified that he did not see any cocaine until after appellant was arrested. Gonzales's testimony shows only that he observed appellant and Franky conversing in Waddy's yard. Waddy (and only Waddy) is the source of all inferences that the events Gonzales observed represented a drug transaction. Accordingly, I conclude that Gonzales's "independent testimony" is shaped entirely by the information that came from Waddy (the confidential informant) and is therefore, not completely "independent."

The majority also concludes that appellant's apprehension "in close proximity" to the drugs at issue constitutes evidence tending to connect appellant to the offense. It is undisputed, however, that the drugs were not found within appellant's reach or anywhere else in the vehicle. Instead, they were found in the cuff of Franky's (the accomplice witness's) sweat pants. The majority concludes the evidence "tending to connect" appellant to the offense is sufficient and should not be characterized as showing appellant's "mere presence" because "mere presence" "denotes an element of innocent coincidence that is entirely lacking in this case." We are not free, however, to speculate as to whether there is an "element of innocent coincidence" in this case. The court of criminal appeals has determined that mere presence of the accused is insufficient to corroborate accomplice witness testimony; in order to "tend to connect" the accused to the offense, such presence must be coupled with "suspicious circumstances."[54] Here, I conclude that because the drugs were found in Franky's pants, not in a common area of the vehicle readily accessible to appellant, such evidence cannot constitute the "suspicious circumstances" required for purposes of corroboration.

## Response to Justice Castillo's Concurring Opinion

In his brief, appellant challenged the sufficiency of the evidence *to corroborate* the testimony of the accomplice witness, Franky (issue one) and the sufficiency of

54. *See Trevino,* 991 S.W.2d at 851–52.

the evidence *to corroborate* the testimony of the confidential informant, Waddy (issue two). Justice Castillo's opinion takes no position on whether accomplice witness testimony can corroborate confidential informant testimony and vice versa, but concludes that the evidence is sufficient to support appellant's conviction as a party to the offense, based on circumstances which affirmatively link him to the drugs. Justice Castillo concludes that "non-accomplice and non-confidential-informant testimony provide the affirmative links sufficient to sustain the conviction on a party theory of culpability." The evidence Justice Castillo points to is the testimony of the law enforcement officers regarding the narcotics investigation and subsequent stop of appellant's vehicle. Justice Castillo states that appellant was a "target" and that "[l]aw enforcement set up a procedure whereby a covert agent would meet with McAfee at a predetermined location for the sole purpose of, and ostensibly to transact, a cocaine buy." However, as noted above, appellant was not a "target" of any investigation until Waddy called Officer Smith and law enforcement officers did not "set up" the transaction; instead, Waddy set up the meeting with appellant and called law enforcement officers to observe the transaction on extremely short notice. For the reasons outlined above, I conclude that the officers' testimony regarding the transaction is insufficient to affirmatively link appellant to the drugs.

### Conclusion

I would hold that the evidence is insufficient to satisfy the requirements of either the accomplice witness rule or the confidential informant rule.[55] Accordingly, I would reverse the judgment of conviction and render a judgment of acquittal.[56]

**In re C.M.B.**

**No. 05–04–01117–CV.**

Court of Appeals of Texas, Dallas.

Oct. 27, 2006.

**55.** *See* TEX.CODE CRIM. PROC. ANN. arts. 38.14, 38.141 (Vernon 2005).

**56.** *See* TEX.R.APP. P. 43.2(c), 43.3.