

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00276-CR

**TERRY LEE BALE,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F44527**

## MEMORANDUM OPINION

After a jury trial, appellant Terry Lee Bale was convicted of unlawful delivery of a controlled substance, methamphetamine, in the amount of more than four grams but less than 200 grams, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6) (categorizing methamphetamine as a Penalty Group 1 controlled substance), 481.112(a), (d) (West 2010). He was subsequently sentenced to forty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $5,000 fine. In one issue, Bale argues that the trial court erred in denying his motion for a

directed verdict. We affirm.

## I.  STANDARD OF REVIEW

A challenge to a ruling on a motion for directed verdict is a challenge to the sufficiency of the evidence to support the conviction. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *see also Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) (en banc). We must consider all the evidence "in the light most favorable to the verdict." *Madden*, 799 S.W.2d at 686. "If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling appellant's motion." *Id.*

## II.  ANALYSIS

In his sole issue on appeal, Bale contends that the trial court erred in denying his motion for a directed verdict because the evidence is insufficient to link him to State's exhibit 1, a plastic bag containing approximately seven grams of methamphetamine. We disagree.

Article 38.141 of the Code of Criminal Procedure establishes the "covert-agent rule," which states as follows:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.
>
> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a)-(b) (West 2005); *see Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (referring to article 38.141 as the "covert-agent

rule").

The covert-agent rule derives not from federal or state constitutional principles, but rather from the legislative determination that the testimony of an informant must be taken with a degree of caution. *See Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.); *see also Bussey v. State*, No. 14-10-00685-CR, 2012 WL 626316, at *4 (Tex. App.—Houston [14th Dist.] Feb. 28, 2012, no pet. h.) (mem. op., not designated for publication). The reason for the rule is that a covert agent often works with the police for self-interested reasons, whether it be for compensation or, as is the case here, to have charges against her reduced or dismissed. *See Simmons v. State*, 205 S.W.3d 65, 72 (Tex. App.—Fort Worth 2006, no pet.). Thus, because a person's self-interest may generate a corrupt motive for testifying, a covert agent is generally considered to be a "discredited witness" whose testimony must be corroborated before a jury may convict the accused. *See Cantelon*, 85 S.W.3d at 460; *see also Young v. State*, 95 S.W.3d 448, 451 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

When determining the sufficiency of corroborating evidence, we eliminate the testimony of the covert agent and examine whether the remaining evidence tends to connect the accused to the charged crime. *See Malone*, 253 S.W.3d at 258 ("There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes."); *see also Krebbs v. State*, No. 10-09-00323-CR, 2010 WL 3584384, at *1 (Tex. App.—Waco Sept. 15, 2010, no pet.) (mem. op., not designated for publication) ("The standard for evaluation of the sufficiency of the corroboration of the testimony of a covert witness is the same as that of the testimony of an accomplice."). The "tends to

connect" standard is not a high threshold, and it may be satisfied with either direct or circumstantial evidence. *See Randall v. State*, 218 S.W.3d 884, 886-87 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also Krebbs*, 2010 WL 3584384, at *1 (noting that the legal sufficiency standard of review does not apply to a review of covert-witness testimony because the corroboration of such testimony is established by article 38.141). Standing alone, the corroboration need not establish the defendant's guilt beyond a reasonable doubt; however, the evidence must show more than the defendant's "mere presence" at or near the scene of the crime. *Malone*, 253 S.W.3d at 257; *see McAfee v. State*, 204 S.W.3d 868, 871-72 (Tex. App.—Corpus Christi 2006, pet. ref'd) (stating that the corroborating evidence must provide "suspicious circumstances" in addition to "mere presence" at the scene of a crime which would tend to rebut that the defendant's presence at the scene of the crime was more than simply an "innocent coincidence"). The evidence is sufficient for purposes of article 38.141 if other "inculpatory facts and circumstances in evidence tend to connect appellant to the offense." *Randall*, 218 S.W.3d at 886 (citing *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

The evidence here, absent the testimony of the confidential informant ("CI"), was that Juan Miguel Torres, an investigator with the Johnson County Sheriff's Office, enlisted the CI to work as a confidential informant for the Johnson County S.T.O.P. Special Crimes Unit in exchange for the dismissal of charges—unlawful possession of drug paraphernalia—against her. According to Torres, the CI told him that she could buy drugs from Bale, though she did not know Bale personally. The CI indicated that

she would use a middle man, Bale's friend Brian Houghtaling, to purchase the drugs. The CI and Houghtaling arranged for the purchase of a quarter-ounce (i.e., approximately seven grams) of methamphetamine from Bale. The transaction took place on May 6, 2008. Prior to meeting with Houghtaling and Bale, the CI met Torres at a predetermined location. Torres arranged for Cleburne Police Officer Kelly Summey to search the CI's person and car for drugs. No drugs were found. Torres stated that, after the searches were completed, the CI was outfitted with hidden audio/video recording equipment and was given a cell phone to record the transaction. In addition, the CI was given $425 to purchase a quarter-ounce of methamphetamine.

Torres recounted that, after the meeting: (1) the CI left to pick up Houghtaling; (2) she and Houghtaling drove to Bale's mobile home in the "Homesteads," which is located in Alvarado, Texas; (3) Houghtaling coordinated the transaction with Bale; and (4) Bale, Houghtaling, and the CI went inside a detached shed to conduct the transaction. Except for the short time that she, Houghtaling, and Bale went into the shed, the CI was never out of the sight of Torres and his surveillance team. The State contends that, even though the trio were out of the surveillance team's sight when they were in the shed, the videotape from the CI's hidden camera captured the CI and Bale completing the arranged transaction—$425 for a quarter-ounce of methamphetamine—and Bale weighing and packaging the drugs before handing them over to the CI.

After the transaction took place, the CI drove Houghtaling back to his house. As payment for his efforts, Houghtaling was given a "pinch" of the methamphetamine by the CI. Torres specifically noted that this act was clearly indicated on the videotape.

After leaving Houghtaling's house, the CI met with Torres and immediately gave him the drugs—a plastic bag later identified as State's exhibit 1. The CI and her car were once again searched for drugs. And, like before, no drugs were found. In addition, the CI no longer had the $425 that was previously given to her by Torres.

After taking the plastic bag of drugs from the CI, Torres field-tested the bag's contents, put the plastic bag in an envelope after writing his initials, agency number, the date, the time, and his badge number on the envelope, and placed the envelope in the evidence locker at the S.T.O.P. headquarters. When shown State's exhibit 1, Torres identified the exhibit as the plastic bag the CI had given him on the day of the transaction. Later, S.T.O.P. Investigator Mark Goetz took the envelope to the Department of Public Safety (DPS) laboratory in Garland, Texas for testing. DPS chemist Genevieve Medina conducted numerous tests on the substance and concluded that the plastic bag contained 6.14 grams of methamphetamine.

Later, Goetz testified that he and the CI tried to arrange for an additional purchase of methamphetamine from Bale. Goetz recalled meeting with the CI, Bale, and Houghtaling for the second drug purchase. Goetz testified that: "Mr. Bale indicated that he did not have the methamphetamine that we were looking for due to some issues with his source either not having it at the time or not being available at the time." While talking to Bale, Goetz noticed that Bale had some methamphetamine on a shelf in the shed, which Houghtaling took and used while Bale and Goetz were talking. Goetz further testified that Bale did not tell him that he does not sell or store methamphetamine; Bale simply told Goetz that he did not have enough to sell that day.

While each of these circumstances taken alone might or might not be sufficient to corroborate the CI's testimony about the drug transaction, the weight of all of them taken together provides the basis for a rational juror to conclude that this evidence sufficiently tended to connect Bale to the charged offense. *See Hernandez v. State*, 939 S.W.2d 173, 178-79 (Tex. Crim. App. 1997). We overrule Bale's sole issue.

### III.    CONCLUSION

We find that there was sufficient evidence that "tended to connect" Bale to the offense for which he was convicted when taken without the CI's testimony. *See Randall*, 218 S.W.3d at 886-87; *see also Krebbs*, 2010 WL 3584384, at *1. As such, we cannot say that the trial court erred in denying Bale's motion for a directed verdict. *See Williams*, 937 S.W.2d at 482; *see also Madden*, 799 S.W.2d at 686. Accordingly, we affirm the judgment of the trial court.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed March 28, 2012
Do not publish
[CRPM]