

# NUMBER 13-09-00640-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

RAUL MORENO GONZALES
A/K/A RAUL MORINO GONZALES,                    Appellant,

v.

THE STATE OF TEXAS,                            Appellee.

## On appeal from the 377th District Court
## of Victoria County, Texas

## MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellant, Raul Moreno Gonzales a/k/a Raul Morino Gonzales, appeals his

convictions for two counts of unlawful possession of marihuana and a single count of

engaging in organized criminal activity. Following a jury trial on guilt-innocence and punishment, appellant was convicted of possessing more than five, but less than fifty pounds of marihuana, on two separate occasions. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (West 2010). Each possession offense was a third-degree felony, enhanced by a habitual-felony offender allegation, which the jury found to be true. *See id.*; TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2010). For each possession offense, appellant was sentenced to eighty years of confinement in the Texas Department of Criminal Justice, Institutional Division ("TDCJ"). The organized-criminal-activity offense was a first-degree felony, also enhanced by a habitual-felony-offender allegation, which the jury found to be true. *See* TEX. PENAL CODE ANN. §§ 71.02, 12.42(d) (West Supp. 2010). For this offense, appellant was sentenced to life in TDCJ. The three sentences are to run concurrently. By four issues, appellant argues that the evidence is insufficient to sustain his convictions and that the trial court reversibly erred by admitting hearsay. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record shows appellant is a member of a notorious criminal street gang, known as "Hermanos Pistoleros Latinos" (hereinafter "HPL"). At the time of his arrest on June 9, 2009, he was the "General" for the Victoria, Texas region of the gang and was the highest ranking member of the HPL outside prison. Appellant controlled activities in various Texas cities, including Victoria, Houston, San Antonio, Corpus Christi, and Port Lavaca. The HPL distributed illegal drugs and committed other crimes. The HPL received drugs from one of the most notorious criminal gangs in Mexico. The record

2

shows the HPL had an elaborate structure and members were even required to pay an income tax to the gang on income they earned.

On May 23, 2009, Corpus Christi police informed Victoria police that a certain package containing marihuana was scheduled to be delivered to a residence in Victoria via FedEx. A police canine confirmed the package contained marihuana, and a police officer was present in the FedEx truck when the package was delivered to the residence. The record shows the residence was appellant's brother Ernest's house and that Ernest was incarcerated at the time of the delivery. Appellant was present while his wife signed for the FedEx delivery of the package. Shortly thereafter, appellant and his wife left the house without the package, and a low-ranking associate of the HPL retrieved the box at appellant's request. The box contained a large amount of marihuana and police arrested the man who retrieved the package. The next day, the man who retrieved the package renounced his affiliation with the HPL and became an undercover informant for the Victoria Police Department (hereinafter "the informant").

On June 9, 2009, acting on information obtained from the informant, Victoria police stopped appellant for a traffic violation and discovered a large quantity of marihuana in a kitchen trash can in the back of his sports-utility vehicle. Appellant was arrested for the unlawful possession of marihuana.

Subsequent police investigation showed that after his arrest, during his pre-trial incarceration, appellant continued to act as the General of the HPL and authorized the murder of a former member "JoJo" Cavasos. Specifically, appellant relayed a "green light" or authorization for the murder to other gang members. Appellant gave the

3

message to his wife, who was also an HPL member, who conveyed it to other gang members who would commit the murder. The HPL members agreed to commit the murder. Police intervened and arrested the other gang members when they assembled to commit the Cavasos murder as planned.

## II. ISSUES PRESENTED

Appellant presents these four issues for review:

(1) Did the trial court reversibly err by admitting an audio recording of a conversation between the informant and appellant's wife in which appellant's wife arguably suggested appellant approved the murders of two gang members, Theresa and Elvis Segura?

(2) Is there sufficient evidence to show appellant intentionally or knowingly possessed the marihuana seized in May 2009 and to corroborate the informant's testimony that appellant possessed the marihuana?

(3) Did the evidence show the June 2009 traffic stop was unlawful and is there sufficient non-accomplice evidence to show appellant knowingly or intentionally possessed the marihuana seized in June 2009 when the evidence obtained from the traffic stop is excluded?

(4) Is the evidence sufficient to show (a) appellant conspired with various other gang members to murder JoJo Cavasos; (b) that he committed an overt act in furtherance of the conspiracy, namely authorizing the murder; and (c) that other gang members performed an overt act in furtherance of the conspiracy, namely gathering with other gang members to commit the murder?

4

## III. ANALYSIS

### 1. Is the Evidence Sufficient to Show Appellant Knowingly or Intentionally Possessed Marihuana in May 2009?

We will review appellant's sufficiency issues first because if the evidence is legally insufficient to support a conviction, we must render a judgment of acquittal. *See Selman v. State*, 663 S.W.2d 838, 840 (Tex. Crim. App. 1984), *overruled on other grounds by*, *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see also Villani v. State*, 116 S.W.3d 297, 307 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). By his second issue, appellant argues the evidence is insufficient to show he intentionally or knowingly possessed the marihuana that was seized in May 2009. Within the body of this argument, appellant also asserts that the informant's testimony was not sufficiently corroborated as is required to sustain his conviction for the offense. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.141, 38.17 (West 2005) (requiring testimony of a person who is acting covertly on behalf of law enforcement to be corroborated by evidence tending to connect the defendant with the offense committed); *see also Malone v. State*, 253 S.W.3d 253, 258 (Tex. Crim. App. 2008) (holding the standards for evaluating the sufficiency of corroboration evidence under the accomplice-witness and covert-agent rules are the same); *Cathey v. State*, 992 S.W.2d 460, 463 n.2 (Tex. Crim. App. 1999) (explaining that acquittal is the proper remedy if the State fails to sufficiently corroborate accomplice testimony); *Patterson v. State*, 204 S.W.3d 852, 857 (Tex. App.—Corpus Christi 2006, pet. ref'd) (en banc) (discussing accomplice-witness and covert-agent corroboration requirements and acquittal remedy). Thus, this issue raises two distinct legal theories

5

and we will address each theory in turn.[1]  *See Cathey*, 992 S.W.2d at 462–64 & n.4 (distinguishing sufficiency review from the accomplice-witness standard of review under Code of Criminal Procedure article 38.14).

### A.  The Sufficiency of the Evidence for the May 2009 Marihuana Offense

When reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979); *Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.).   Under this standard, we are not required to exclude the informant's testimony or accomplice testimony in conducting our sufficiency review.   *See Taylor v. State*, 10 S.W.3d 673, 684 (Tex. Crim. App. 2000) (distinguishing statutorily-imposed sufficiency review from sufficiency review derived from constitutional principles and explaining accomplice-witness testimony can be sufficient to sustain a conviction under the *Jackson v. Virginia* standard).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.   *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App.

---

[1]   Although appellant's corroboration theory renders this issue and his third and fourth issues multifarious, we may consider the corroboration theory because we are able to determine with reasonable certainty the alleged error about which the complaint is made.   *See Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see also Lopez v. State*, No. 13-09-00585-CR, 2010 WL 5541704, at *8 n.4 (Tex. App.—Corpus Christi Dec. 30, 2010, pet. ref'd) (mem. op., not designated for publication) (same); *Dilworth v. State*, No. 13-07-00520-CR, 2008 WL 5732155, at *3 n.3 (Tex. App.—Corpus Christi Dec. 4, 2008, pet. ref'd) (mem. op., not designated for publication) (same).   We also note that recently, in an unpublished opinion, the Texas Court of Criminal Appeals unanimously decided to address the merits of a multifarious point of error by which a criminal defendant complained evidence was both insufficient to sustain his conviction and that accomplice-witness testimony was not sufficiently corroborated.   *See Ramirez v. State*, No. AP-76100, 2011 WL 1196886, at *6 n.4 (Tex. Crim. App. March 16, 2011) (not designated for publication).   Although the *Ramirez* opinion has no precedential value, we consider the analysis therein persuasive.   *See* TEX. R. APP. P. 77.3.

1997)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Id.*  The offense of unlawful possession of marihuana is committed when (1) a person; (2) knowingly or intentionally; (3) possesses; (4) a usable quantity of marihuana; (5) without legal authority to do so.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2010).  In this case, appellant challenges only the sufficiency of the evidence with regard to the "knowingly or intentionally" element.  The record contains ample evidence to support the conviction.

Appellant's adult son, the informant, and two other HPL members all testified appellant was the head of the HPL in Victoria, Texas and that, as such, appellant regularly received large shipments of marihuana that he divided into smaller units and distributed to other gang members to sell.   The gang members, in turn, returned a certain percentage of their profits to the HPL.   A sergeant,[2] working in the Special Crimes Unit of the Victoria Police Department ("SCU Sergeant"), testified that based on his investigation, which included his review of undercover recordings, interviews with HPL members, study of the structure of HPL, and discussions with gang experts, that appellant was the head of HPL in Victoria.

The informant, appellant's son, and other gang members all testified that appellant's wife, Cynthia Gonzalez, was also an HPL member.   Cynthia Gonzalez was the record keeper and treasurer for the HPL.   Among other things, she recorded the dues gang members paid to attend meetings and the amounts they paid to the HPL as revenue

---

[2] The record shows this witness was a sergeant at the time he investigated this case.

from illegal drug sales. She also kept paperwork showing who belonged to the gang and the gang's rules and regulations. These records were usually kept in a black bag at appellant's home, and were admitted into evidence at trial.

Regarding the May 23 marihuana shipment, the informant testified that on May 23, appellant's brother, Jesus, told him appellant wished to speak to him (the informant). Appellant then visited the informant's house and told him that if he retrieved a package from appellant's brother's house, the informant's drug debt to appellant would be "wiped clean." Soon after, another gang member and his wife arrived in a pick-up truck to drive the informant to the house to retrieve the package for appellant. The driver's wife testified at trial that the marihuana retrieval was for appellant.

The informant testified at trial that after the informant was arrested for being in the back of the pick-up with the box of marihuana, that appellant, in a recorded conversation, told the informant of his "involvement" with the marihuana. Appellant told the informant he did not want the marihuana to be traced back to him and stated he was standing right behind his wife, Cynthia Gonzalez, when she signed for the delivery of the box of marihuana.

Two members of the Victoria Police Department testified that appellant was the man who was with Cynthia Gonzalez when she signed for the marihuana delivery. Specifically, the SCU Sergeant testified he observed as she signed for the package and believed, even from afar, the man outside with her was appellant. The SCU Sergeant had seen appellant before and knew who he was. At the time, appellant and his wife had

8

just arrived and exited a sports-utility vehicle. They were standing outside the front of the house.

After signing for the package and leaving it inside the house, Cynthia Gonzalez and the man were seen driving to a nearby convenience store. The SCU Sergeant later confirmed, using the convenience store's surveillance video, that the man was indeed appellant. A narcotics officer with the Victoria Police Department also testified at trial that he recognized appellant on the surveillance video as Raul Gonzales, a person known to him.

At trial, the FedEx deliveryman also identified appellant as the man who was present when Cynthia Gonzalez signed for the package of marihuana. He testified appellant was "looking around" to the left and right "observing the full area" while his wife signed for the package. The FedEx deliveryman also admitted he did not correctly identify appellant in a photograph spread prior to trial. But, the record shows appellant was wearing sunglasses when the package was delivered and the FedEx deliveryman did narrow the photographs down to two photographs, one of which depicted appellant. In the photograph spread, no one was shown wearing sunglasses. Based on our review of the evidence in the appellate record, we conclude a rational jury could have found beyond a reasonable doubt that appellant knowingly or intentionally possessed the marihuana that was seized on May 23. *See Jackson*, 443 U.S. at 326.

**B. Covert-Agent Rule and the May 2009 Marihuana Offense**

Appellant claims that the evidence is insufficient to corroborate the informant's testimony. Article 38.141 of the Texas Code of Criminal Procedure, entitled "Testimony

of Undercover Peace Officer or Special Investigator," provides:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

> (b) Corroboration is not sufficient for purposes of this article if the corroboration only shows commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a), (b) (West 2005).   Traditional standards of review for the sufficiency of evidence are not applicable to a review of covert witness testimony under article 38.141.   *See id.*; *Cathey*, 992 S.W.2d at 462–63.

We review a claim challenging the sufficiency of evidence to corroborate the testimony of a covert witness under the same statutorily required standard that is applied to a challenge of the testimony of an accomplice. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141(a), (b); *Malone*, 253 S.W.3d at 257; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.14 (pertaining to corroboration required of accomplice witness).   Under this standard, a reviewing court must exclude the testimony of a covert agent from consideration when weighing the sufficiency of corroborating evidence under article 38.141(a) and examine the remaining evidence to determine whether the evidence "tends to connect" the defendant to the commission of the offense.   *Malone,* 253 S.W.3d at 258; *see* TEX. CODE CRIM. PROC. ANN. art. 38.141(a).   In reviewing the specific facts of each case to determine whether evidence is sufficient to corroborate covert-agent testimony, we may not consider accomplice-witness testimony that needs to be corroborated under article 38.14.   *Patterson*, 204 S.W.3d at 859.

10

Evidence is insufficient if it shows merely that an accused was present during the commission of the offense. *McAfee v. State,* 204 S.W.3d 868, 872 (Tex. App.—Corpus Christi 2006, pet. ref'd) (en banc). Rather, the corroborating evidence must provide "suspicious circumstances" in addition to mere presence at the scene of the offense to rebut the premise that an accused's presence at the scene of an offense was an innocent coincidence. *Id.* There must be some evidence which tends to connect the accused to the commission of the offense. *Hernandez v. State,* 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997). Although evidence that tends to connect an accused to an offense may not be sufficient for a conviction, the evidence need not rise to such a high threshold for purposes of corroboration under the prevailing standard. *See Gill v. State,* 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *McAfee,* 204 S.W.3d at 871. The absence of "smoking gun" evidence does not invalidate evidence that does connect the defendant to the offense. *Id.*

Absent the testimony of the informant and any accomplice, the remaining evidence establishes the following:

- The SCU Sergeant concluded appellant was head of the HPL in Victoria.

- The SCU Sergeant listened undercover to controlled drug buys from HPL members and confirmed the HPL was involved in the sale and distribution of marihuana.

- The HPL records from the black bag were admitted into evidence at trial and showed the receipt of significant sums of money from various HPL members.

11

- The SCU Sergeant and the FedEx deliveryman identified appellant as the man who was present in the driveway when appellant's wife, Cynthia Gonzalez, signed for the delivery of the marihuana on May 23.

- The FedEx deliveryman testified that Cynthia Gonzalez told him that the female to whom the package was addressed lived at the residence and she (Cynthia Gonzalez) could sign for it. Neither Cynthia Gonzalez nor appellant refused to take delivery of the package containing the marihuana.

- The FedEx deliveryman noticed appellant was "looking around" to the left and right and "observing the full area" during the delivery of the package.

- Shortly after the package was delivered, police saw appellant and Cynthia Gonzalez travel to a nearby convenience store to wait while the informant came to retrieve the package from the house.

The weight of all the corroborating circumstances, taken together, provides the basis for a rational jury to conclude that this evidence sufficiently tended to connect appellant to the commission of the charged offense. *See Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009); *Malone*, 253 S.W.3d at 269. We hold the evidence was legally sufficient to sustain appellant's conviction for unlawful possession of marihuana on May 23 and that the informant's testimony was sufficiently corroborated. Appellant's second issue is overruled.

2. **Was the Traffic Stop Valid and, If Not, Was There Sufficient Non-Accomplice Evidence to Show Appellant Knowingly or Intentionally Possessed Marihuana in June 2009?**

By his third issue, appellant argues the evidence shows that the traffic stop that resulted in his arrest for marihuana possession on June 9, 2009 was unlawful. Appellant acknowledges a Victoria Police Department officer testified he stopped appellant for not stopping at a stop sign, but emphasizes that his son offered conflicting testimony on this point. Appellant argues further that when the evidence obtained during the traffic stop is

excluded, there is not sufficient non-accomplice evidence to connect appellant to the knowing and intentional possession of marihuana for the June 2009 offense, and that he is therefore entitled to an acquittal for this offense. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.14, 38.17 (West 2005).

As legal authority for this argument, appellant cites the *Jackson v. Virginia* sufficiency standard and references the above-discussed accomplice-witness rule. The jury was instructed, pursuant to article 38.23 of the Texas Code of Criminal Procedure, that it was required to disregard the evidence if it was obtained as a result of an unlawful traffic stop. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). An appellate court may not conduct a sufficiency review of a jury's determination under article 38.23; rather, a sufficiency review applies to whether sufficient evidence shows the elements of a criminal offense. *See Hanks v. State*, 137 S.W.3d 668, 672 (Tex. Crim. App. 2004) (holding factual-sufficiency review does not apply to a jury's determination under an article 38.23 instruction); *see also Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008) ("[h]ad he received an Article 38.23 jury instruction, he would have no appellate claim at all because the jury's decision regarding that factual dispute would be unreviewable"); *Garza v. State*, No. 13-05-00374-CR, 2006 WL 3375333, at *2 (Tex. App.—Corpus Christi Aug. 22, 2007, pet. ref'd) (mem. op., not designated for publication) (applying *Hanks*). Thus, appellant's third issue presents a question that is unreviewable. Accordingly, appellant's third issue is overruled.

### 3. Is the Evidence Sufficient to Sustain Appellant's Conviction for Engaging in Organized Criminal Activity?

By his fourth issue, appellant argues the evidence is insufficient to sustain his conviction for engaging in organized criminal activity by conspiring to murder JoJo Cavasos. Specifically, appellant argues a jury could not have rationally found beyond a reasonable doubt that (1) he conspired "to commit murder by agreeing with Cesar Casarez, Alfredo Deleon IV, Cynthia Gonzalez, Carlos Nunez, Eric Hernandez, Johnny Ocanas, Christopher Solis, Abel Gonzalez and Claro Lopez;" (2) he performed an overt act in furtherance of the agreement, namely giving verbal authorization for the murder; and (3) that Cesar Casarez, Alfredo Deleon IV and Eric Hernandez performed an overt act, namely gathering with other gang members to commit the murder.[3]

Within the body of this argument, appellant also asserts that Casarez and Deleon's accomplice testimony concerning whether appellant authorized the Cavasos murder was not sufficiently corroborated as is required to sustain his conviction for the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) (accomplice-witness rule). Thus, as with appellant's above-discussed second issue, this issue raises two distinct legal theories and we will address each theory in turn. *See Cathey*, 992 S.W.2d at 462–64 & n.4.

---

[3] We note that by his fourth issue, appellant challenges only the sufficiency of the evidence and the adequacy of the corroborating evidence to show appellant authorized the Cavasos murder. Appellant does not cite any legal authority for the proposition that the overt acts alleged by the State were mere planning that did not amount to an offense under the Penal Code. *See* TEX. R. APP. P. 38.1(i). Accordingly, our review is an evidentiary review.

14

## A. The Sufficiency of the Evidence to Show Appellant Engaged in Organized Criminal Activity

We review the sufficiency of the evidence under the *Jackson v. Virginia* standard discussed above in connection with appellant's second issue. *See Jackson*, 443 U.S. at 318–19. Under this standard, we may consider accomplice and covert-agent testimony. *See Taylor*, 10 S.W.3d at 684.

As pled in the indictment, the offense of engaging in organized criminal activity is committed when (1) a person as a member of a criminal street gang; (2) conspires to commit; (3) the offense of murder. *See* TEX. PENAL CODE ANN. § 71.02(a)(1) (West 2006). For this offense, "conspires to commit" "means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." *Id.* at § 71.01(b). In other words, the State must prove two overt acts, one of which was committed by the accused. *McIntosh v. State*, 52 S.W.3d 196, 200 (Tex. Crim. App. 2001). The State may rely on circumstantial evidence to prove essential elements of the offense. *Shears v. State*, 895 S.W.3d 456, 459 (Tex. App.—Tyler 1995, no pet.).

The record contains ample evidence to show appellant was guilty of the offense as charged. The informant, Casarez, Deleon, and the SCU Sergeant all testified that appellant authorized the HPL members to murder Cavasos and that, within the gang, appellant's authorization for the murder was required. The informant, Casarez, and Deleon testified that appellant gave the authorization through his wife, who as a leader in the HPL, was authorized to communicate appellant's messages during his incarceration.

15

Deleon communicated appellant's "green light" for the Cavasos murder to HPL members during the HPL's June 17 meeting.

The SCU Sergeant testified that he listened by wire to the June 17 meeting at which the gang members discussed the "green light" or authorization for the Cavasos murder and planned how and where they would commit the murder. The HPL members named in the indictment agreed they would meet at a future date and two of them, Eric Hernandez and another gang member, would follow Cavasos when he left a baseball game at a nearby park. They decided to follow him to a "secluded" location, such as a home, rather than murdering him at the park where they were more likely to be seen and/or apprehended. The other gang members would follow at a distance to offer assistance, traveling in separate vehicles. The men planned to obtain a firearm that could not be traced back to them to use as the murder weapon.

On June 22, the day HPL members were arrested for carrying out the murder plot, the following events transpired. Four gang members, including Hernandez and Casarez, met at Deleon's house to commit the murder. The informant was also present. By wire, members of the Victoria Police Department listened as the gang members assembled to commit the murder. The HPL had not managed to find a "suitable" firearm, so Casarez, who had a tool bag in his car, suggested that Hernandez use a hammer. Casarez described to the other gang members how to murder someone with a hammer, and how the victim would respond after being bludgeoned in the head. By cellular telephone, Deleon, who was in his car nearby, called the HPL members and told them to disperse from his house because police were in the area. The police intervened and

16

arrested all of the gang members present before they could disperse. The SCU Sergeant testified that one of the police goals was to make the arrests before gang members left the building to kill the victim, to avoid the possibility of a shootout in a public place. After reviewing the evidence in the record, we conclude a rational jury could have found beyond a reasonable doubt that appellant engaged in organized criminal activity by conspiring to murder Cavasos. *See Jackson,* 443 U.S. at 326.

### B. Accomplice-Witness Rule

We now turn to appellant's claim that there was not corroborating non-accomplice evidence that tended to connect appellant to the act of authorizing the Cavasos murder. Article 38.14 of the Texas Code of Criminal Procedure, entitled "Testimony of Accomplice," provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). We review this question under the same standard of review we used above in applying the covert-agent rule. *See Malone*, 253 S.W.3d at 258.

Absent the accomplice and informant testimony, the remaining evidence establishes the following:

- Appellant's son, who was not a gang member and who was not an accomplice to this offense, testified appellant told him that in the HPL, he authorizes events such as murders and aggravated assaults by giving the "green light." Appellant's son testified he did not know how appellant gives "green lights" when he is incarcerated.

- State's Exhibit 100 consisted of a recorded conversation between

17

appellant's wife and the informant that showed, even from jail, appellant relayed messages to other gang members who were not incarcerated by having his wife communicate the messages.

- The SCU Sergeant testified appellant was the General of the HPL and that his approval was required for any murder in Victoria, including the Cavasos murder.

- The HPL operated according to certain rules it had made for itself. The SCU Sergeant heard an incarcerated gang member other than appellant call into the June 17 HPL meeting and pursuant to HPL rules and regulations, this member was responsible for presenting evidence why the murder should be committed; this member did not have authority within the HPL to authorize the murder. Only appellant had that authority under the HPL rules.

- The SCU Sergeant listened by wire to the June 17 HPL meeting at which members discussed that they had received the "green light" or authorization for the Cavasos murder.

The weight of all the corroborating circumstances taken together provides the basis for a rational jury to conclude that sufficient evidence connected appellant to the commission of the charged offense. *See Simmons*, 282 S.W.3d at 511; *Malone*, 253 S.W.3d at 269.

We hold the evidence was legally sufficient to sustain appellant's conviction for engaging in organized criminal activity with respect to the conspiracy to murder Cavasos and conclude the accomplice testimony was sufficiently corroborated. Appellant's fourth issue is overruled.

## 4. Did the Trial Court Reversibly Err by Admitting the Recorded Conversation?

By his first issue, appellant argues the trial court reversibly erred by admitting State's Exhibit 100 into evidence over appellant's hearsay objection. A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

State's Exhibit 100 consisted of a recorded conversation between the informant and appellant's wife, Cynthia Gonzalez. Appellant's complaint is that the following excerpt from the exhibit, as interpreted by the informant in his trial testimony, "implicated [appellant] in the 'green light' for the murders of [gang members] Theresa and Elvis Segura."

| CYNTHIA GONZALEZ [sic]: | I don't know. |
|---|---|
| [INFORMANT]: | Well, you know if he says anything about— |
| CYNTHIA GONZALEZ: | (inaudible) [Y]ou know, you know he try to tell me, well, you know just tell them it's easy that it's easy, you know what I mean by that, (inaudible) because you don't know, you know, he—you do him you going to have to take care of her ass, too. |
| [INFORMANT]: | Yeah. |
| CYNTHIA GONZALEZ: | That's the bad thing . . . . |

The informant testified that the "he" in this excerpt was a reference to appellant and that Cynthia Gonzalez meant that if the HPL killed Elvis Segura, they would also "have to" kill Theresa Segura.

On appeal, appellant argues this excerpt had no bearing on the charge that appellant engaged in organized criminal activity on June 17, 2009, as alleged in the indictment. According to appellant, the trial court's admission of this evidence was harmful error because appellant was accused of giving the "green light" for the murder of JoJo Cavasos and this extraneous offense concerning the Seguras impermissibly

19

suggested that because appellant authorized the murder of the Seguras, he must have authorized the Cavasos murder.

However, the record shows that prior to the State's offer of Exhibit 100, the jury heard testimony that appellant gave the "green light" for HPL members to murder the Seguras and appellant did not object to the admission of this testimony. Specifically, another gang member testified to this fact without objection. In addition, on cross-examination by defense counsel and without objection, the informant testified that Cynthia Gonzalez told him to relay a message to another gang member that the other gang member "needed to do something to make these people [the Seguras] disappear." Under these circumstances, "whether or not the complained of" evidence "was admissible as an exception to the hearsay rule is irrelevant." *See Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986). An error in the admission of evidence is harmless when, as here, the same evidence comes in elsewhere without objection. *Id.*; *Rivera-Reyes v. State*, 252 S.W.3d 781, 787 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Appellant's first issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
Gregory T. Perkes
Justice

Do not publish. Tex. R. App. P. 47.2(b).

Delivered and filed the
22nd day of November 2011.

20