

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00297-CR

---

MARK BETHEL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2021-423232, Honorable Douglas H. Freitag, Presiding

---

March 8, 2023

OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

A jury found Appellant, Mark Bethel, guilty of capital murder by murdering more than one person pursuant to the same scheme or course of conduct.[1]  Appellant was sentenced to life imprisonment without parole.  In this appeal, Appellant raises issues relating to jury charge error, sufficiency of the evidence, comments on the weight of the evidence, and cautionary instructions.  We affirm the judgment of the trial court.

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(B).

## BACKGROUND

In the summer of 2015, Appellant moved into a house at Buffalo Springs Lake, near Lubbock. Not long after, Appellant's cousin, David Bethel, along with his girlfriend, Kristina Theony, came to live in the home. Appellant soon began dating Jessica Payton, who also moved in with him. Around September of 2015, David[2] and Theony moved into a mobile home near 86th Street and Ash Avenue in Lubbock.

One early morning in October of 2015, Appellant woke to find Payton gone. He discovered that Payton had taken some of his money and was having an affair with a man named Shawn Summers. On October 25, Appellant sent numerous text messages to Payton expressing anger at her actions, telling Payton he had loved and trusted her, but that he now hated her. On Monday, October 26, Appellant told one of his neighbors that Payton had left him and taken some of his things. The neighbor testified that Appellant looked hurt and brokenhearted. He and his wife took a meal to Appellant later that day. Appellant, David, and Theony were all at Appellant's house. When the neighbor went inside the house, David showed him his 9mm Ruger pistol.

Sometime in the week before Halloween, David and Theony hosted a cookout, attended by Appellant, his sister, and his teenaged niece, at their mobile home. Appellant's niece noticed that Appellant seemed upset rather than his usual lighthearted self. She heard David tell Appellant, "We'll get them back," which she understood was an effort to lighten Appellant's mood.

---

[2] Because Appellant and David Bethel share a last name, we will refer to David Bethel by his first name only to avoid confusion.

Theony testified that, in this same time period, she heard Appellant and David discuss trying to find Payton. She also heard Appellant say, "I want to kill that b****." David responded that if Appellant did not do it, he would do it himself.

Appellant and Payton reconnected on October 26. Summers and his sister saw the couple driving into Buffalo Springs Lake on the neighborhood's sole road. On Tuesday, October 27, Appellant texted Payton again, stating that he loved her and that it was good to see her. He told her he would see her the following day. On October 28, he sent her a text saying, "I will be there at lunch time." Appellant clocked out of work at 12:20, picked up Payton, and drove to Buffalo Springs Lake. Payton's cell phone pinged off a cell tower at Buffalo Springs Lake at 1:02 p.m. Her cell phone had no more outbound activity after October 28.

That same day, a neighbor heard a man's voice coming from Appellant's house yell, "Shut up." The yelling was followed by four pops "like a pistol gunfire."[3] The neighbor saw the curtain on Appellant's patio door move back, then saw a man look to the left and the right. Within 15 to 30 minutes, the neighbor saw Appellant's truck drive away from the house. Appellant made a phone call to David at 1:20 p.m. and clocked back in to work at 1:37. Several hours after hearing the gunfire, the neighbor called the chief of police at Buffalo Springs Lake to report the incident. Around 5:00 or 5:30 that evening, the neighbor saw Appellant's truck, along with David's truck, back at the house.

---

[3] The neighbor testified that he did not know the exact time he heard the gunshots. He initially told the police he thought it was around 2:00 or 2:30.

3

On Saturday, October 31, David and Theony went to Appellant's house. Theony noticed that the living room carpet was gone and the house had an unusual chemical smell. Theony testified that Appellant and David had had discussions about "taking care of" Summers, but they seemed more serious about it on Halloween. She said they wanted to "get him" for cheating with Payton. Theony had indicated to David that she did not want to participate in anything happening to Summers, but that afternoon David held Theony against the wall in Appellant's kitchen, pressed his gun to her head, and told her to get Summers to a place where David could "get him." David told her that she would do it or else she would end up "with that b**** in the lake."

That afternoon, Theony began sending text messages to Summers. Theony told him that she and David had broken up and that she wanted to hang out with Summers. As their message exchange progressed, Theony promised Summers sexual activity if he would meet up with her that night. He agreed to meet her at 86th and Ash. Around 9:00 that night, Summers arrived at the location, where David was waiting. While Summers was still in his vehicle, David shot him with his 9mm Ruger pistol. At 9:20 p.m., Summers made a 9-1-1 call to report that he had just been shot. Shortly thereafter, David entered Summers' vehicle, pushed Summers into the passenger seat, and drove the vehicle to a field off east 19th Street. David shot Summers again before pouring gasoline onto him and lighting the vehicle on fire. Cell phone records indicated that Appellant picked David up and drove him home.[4] David and Theony quickly left Lubbock, traveling to Oklahoma, then Missouri, then Arizona, where they were arrested. David confessed to murdering

---

[4] David told investigators that he walked to a hotel after starting the fire, then called Theony to pick him up.

4

Summers but did not implicate Appellant in the crime. When called as a witness at Appellant's trial, David refused to answer any questions.

On November 1, 2015, a passerby saw a body, wrapped in a comforter, beneath the spillway at Buffalo Springs Lake. Rescue crews recovered the body, which was weighted down with a chain and cinder blocks. It was Payton. She had been shot four times in the head. The comforter matched pillow shams found in Appellant's home. Paint chips on the cinder blocks matched paint chips found in David's vehicle. Payton's blood was found in Appellant's home and on a floor mat from the bed of Appellant's vehicle. Two of Payton's gold rings were found in Appellant's vehicle.

Appellant was indicted on June 15, 2021, by the grand jury of Lubbock County for the offense of capital murder. After a two-week trial, at which more than 30 witnesses testified, the jury found Appellant guilty.

**ANALYSIS**

Issue 1: Failure to Include Definitions in Jury Charge

In his first issue, Appellant asserts that the trial court's charge was too vague with respect to the meaning of the words and phrases used to elevate the offense of murder to capital murder. We review alleged jury charge error in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether the charge contains error. *Id.* If the charge is erroneous, we then analyze the error for harm. *Id.* If the defendant timely objected to the jury instructions, reversal is required if there was some harm to the defendant. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). If the

5

defendant did not timely object to the jury instructions, "reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial." *Id.*

Here, the charge stated that "[a] person commits the offense of capital murder if the person murders more than one person during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct." It further instructed the jury that, if it found beyond a reasonable doubt that Appellant intentionally or knowingly caused the death of Payton and intentionally or knowingly caused the death of Summers, "and both murders were committed pursuant to the same scheme or course of conduct, but during different criminal transactions," then it would find Appellant guilty of the offense of capital murder. At the charge conference, Appellant's trial counsel objected that the phrase "same scheme or course of action" was "too vague." Counsel acknowledged that the language in the charge tracked the statute[5] and that there was no definition for the phrase in the Penal Code. Counsel did not offer a proposed definition. The trial court overruled his objection. On appeal, Appellant contends that, without further definition, jurors had no guidance by which to distinguish "one from more than one criminal transaction."

The trial judge is required to give the jury a written charge setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. Statutorily defined terms constitute law applicable to the case and must be included in the court's charge. *Celis v.*

---

[5] The jury charge, like the indictment, tracks the language of section 19.03(a)(7)(B) of the Texas Penal Code, which elevates the offense of murder to capital murder based on two murders committed "during different criminal transactions but [when] the murders are committed pursuant to the same scheme or course of conduct." TEX. PENAL CODE. ANN. § 19.03(a)(7)(B).

6

*State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013). However, it is generally impermissible for the trial court to define terms in the jury charge that are not statutorily defined, as such terms are not considered to be the "applicable law" under article 36.14. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). Statutorily undefined terms generally should be "read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a). Jurors "may 'freely read [undefined] statutory language to have any meaning which is acceptable in common parlance.'" *Kirsch*, 357 S.W.3d at 650 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). But "terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning," are to be considered as being used in their technical sense. *Id.* (quoting *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000)).

"Same scheme or course of conduct" is not defined in the Penal Code. Nor is "criminal transaction."[6] Because the terms are not statutorily defined, the trial court was correct to decline to define the terms in the jury charge unless the terms have acquired an established legal or technical meaning that differs from the meanings accepted in common parlance. *See Green*, 476 S.W.3d at 445. Appellant has not cited any authority establishing that "same scheme or course of action" or "criminal transaction" has a technical or legal meaning that differs from common usage, nor has he provided guidance

---

[6] Appellant also suggests that the trial court should have defined the phrase "criminal transaction." Because Appellant's trial objection did not address the lack of a definition for "criminal transaction," we may not reverse for this alleged jury charge error unless the record shows "egregious harm." *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (en banc).

7

on what the proper definition of these terms should be.  Instead, he submits that the trial court was obliged to draw from the language of various Texas cases "to clarify, to the extent possible, the meaning of the parts of the charge here at issue."

Because these terms are not statutorily defined and Appellant has directed this Court to no authority establishing that these terms have acquired a special legal or technical meaning, we conclude that the trial court did not err by failing to define either term in the jury charge.  The jury was properly allowed to assign the terms any meaning ascribed in common parlance.  *See Kirsch*, 357 S.W.3d at 650.  Having concluded that the trial court did not err in not defining "same scheme or course of conduct" or "criminal transaction," we need not conduct a harm analysis.  *Id.* at 649.  We overrule Appellant's first issue.

To the extent that Appellant's first issue is intended to encompass a claim that section 19.03(a)(7)(B) of the Penal Code is unconstitutional as applied to him, such a claim cannot be raised for the first time on appeal.  *See, e.g., Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) ("'As applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error.").  Although Appellant objected that the phrase "same scheme or course of action" was "too vague," he did not raise an objection on constitutional grounds, as required to preserve an as-applied challenge.  *See* TEX. R. APP. P. 33.1(a) (general rule for preservation of error); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) ("specific, timely objection" at trial required to preserve as-applied constitutional challenge).  Therefore, we reject Appellant's attack on the constitutionality of the statute.

8

Issue 2: Sufficiency of the Evidence

In his second issue, Appellant challenges the sufficiency of the evidence to establish that the killings were committed pursuant to the same scheme or course of conduct, but during different criminal transactions. Appellant argues that the two murders were part of a single criminal transaction.

When assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *See Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997).

As discussed above, the legislature did not define either "criminal transaction" or "same scheme or course of conduct" as used in the capital murder statute, and the trial court did not provide a definition in the charge. The Texas Court of Criminal Appeals has explained that the difference between murders that occur "during the same criminal transaction" and murders that occur "pursuant to the same scheme or course of conduct" is "the degree of 'the continuity of the killing.'" *Coble v. State*, 871 S.W.2d 192, 198 (Tex. Crim. App. 1993) (en banc) (quoting *Rios v. State*, 846 S.W.2d 310, 314 (Tex. Crim. App. 1992)). In *Coble*, the court determined that murders occurred "during the same criminal

9

transaction" when they "occurred in close proximity to each other, on the same road, within a few hours of each other, in a continuous and uninterrupted series of events." *Id.* at 198–99; *see also Vuong v. State*, 830 S.W.2d 929, 941 (Tex. Crim. App. 1992) (en banc) (murders occur during same criminal transaction when evidence shows "a continuous and uninterrupted chain of conduct occurring over a very short period of time . . . in a rapid sequence of unbroken events."). In contrast, murders occur "pursuant to the same scheme or course of conduct" when the evidence shows a break in conduct but an "over-arching objective or motive . . . ." *Feldman v. State*, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002).

The question before us is whether a jury could rationally conclude that Appellant committed the murders during different "criminal transactions," but pursuant to the "same scheme or course of conduct." Viewed in the light most favorable to the jury's verdict, the evidence supports the jury's conclusion that the two murders were so committed. The evidence adduced at trial established a temporal and geographic break between the murder of Payton and the murder of Summers. There was evidence showing that Payton was shot in the head four times on Wednesday, October 28, 2015, at Appellant's home, while Appellant was on his lunch break. Appellant returned to work and worked regular hours for the remainder of the week. Payton's body, wrapped in a comforter and weighted down with chains and cinder blocks, was recovered from the lake on November 1. Summers was killed on Saturday, October 31, in Lubbock. He was shot and driven to a field, where he and his vehicle were doused with gasoline and set on fire. His body, still inside the burning vehicle, was discovered that night. These separate locales, along with the lapse of a few days between the murders, provide a break in the continuity of the

killings. Thus, the jury could rationally conclude that the two murders were not committed as part of a single criminal transaction. *See, e. g., Burkett v. State*, 172 S.W.3d 250, 254 (Tex. App.—Beaumont 2005, pet. ref'd) (where evidence established temporal and geographic discontinuity between murder of woman in her home and murder of her son and his friend hours later in wooded area, evidence was legally sufficient to support conclusion that murders were committed in different criminal transactions).

Further, the evidence supports the jury's conclusion that the murders were committed pursuant to a common scheme or course of conduct. The evidence showed that the over-arching objective for the killings was Appellant's desire to get revenge because Payton had been having an affair with Summers. The same motivating reason was behind both murders. *See id.* (three murders were committed pursuant to same scheme or course of conduct when committed in course of stealing family's vehicles).

We conclude that a rational trier of fact could have found, beyond a reasonable doubt, that the murders were not part of a single criminal transaction but were committed pursuant to the same scheme or course of conduct. We overrule Appellant's second issue.

Issue 3: Accomplice Witness Instruction Regarding David Bethel

In his third issue, Appellant contends that the trial judge undermined the presumption of innocence and improperly commented on the weight of the evidence by including a sentence in the court's charge reading, "David Bethel a/k/a Dave Bethel is an accomplice to the crime of murder, if it was committed, a lesser included offense of the crime charged in the indictment." The following sentence reads, "The defendant, Mark

11

Bethel, therefore cannot be convicted on the testimony of David Bethel a/k/a Dave Bethel unless the testimony is corroborated."

"One who participates with the defendant before, during, or after the commission of the crime and acts with the required culpable mental state for the crime is an accomplice." *Patterson v. State*, 606 S.W.3d 3, 29 (Tex. App.—Corpus Christi-Edinburg) (citing *Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017)). An accomplice witness instruction requires a jury to find that the testimony of an accomplice witness was corroborated before it can rely on that testimony for a conviction. TEX. CODE CRIM. PROC. ANN. art. 38.14 (conviction may not be had upon testimony of an accomplice unless that testimony is corroborated by other non-accomplice witness evidence tending to connect defendant to the crime). If a prosecution witness is an accomplice as a matter of law, the trial court is under a duty to instruct the jury accordingly and the failure to do so is error. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (en banc).

At trial, David was called as a witness, but he refused to answer any questions. The trial court held him in contempt of court. The trial court also stated that David had been granted testimonial immunity and that any testimony he gave in the trial could not be used against him in any later criminal proceeding. After David was excused, the jury viewed a videotaped recording of his interview with investigators, pursuant to an agreement between the State and Appellant's trial counsel.

Appellant argues that there was no basis to include the accomplice witness instruction because David never testified and that, by including the instruction, the trial court effectively instructed the jury that Appellant was a "partner in crime" with David. Appellant did not object to the inclusion of the instruction at trial. Therefore, "reversal is

required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial." *Marshall*, 479 S.W.3d at 843.

Assuming without deciding that it was erroneous to include the accomplice witness instruction regarding David in the jury charge, we will proceed to a harm analysis. We review the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in order to determine whether the error was so egregious that Appellant was denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 171–74.

A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.). The plain purpose of the accomplice witness instruction is to disallow any conviction based upon uncorroborated testimony of an accomplice. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Here, the instruction is qualified and therefore not a comment on the weight of the evidence. *See Easter v. State*, 867 S.W.2d 929, 941 (Tex. App.—Waco 1993, pet. ref'd) (holding that because instruction included phrases "if any were committed" and "if any," it was not a comment on the weight of the evidence). Moreover, the instruction is intended to benefit the accused. *See Hareter v. State*, 435 S.W.3d 356, 360 (Tex. App.—Amarillo 2014, no pet.) ("We hardly see how an instruction benefiting an accused can, at the same time, amount to a comment on the weight of the evidence benefiting the State.").

Even if the instruction was unwarranted, we do not find egregious harm. To the extent that the instruction focused the jury's attention on David, it did so with the purpose of requiring the jury to corroborate David's testimony. *See Druery v. State*, 225 S.W.3d

491, 497–98 (Tex. Crim. App. 2007) (accomplice witness instruction, even if superfluous, "could only benefit" defendant). There is no indication that Appellant was harmed by an instruction requiring additional corroborating evidence. We conclude that Appellant was not denied a fair and impartial trial, and the inclusion of the accomplice witness instruction, if error, was not reversible error in this case. Appellant's third issue is overruled.

Issue 4: Caution Regarding Witness Testimony

In the first part of Appellant's fourth issue, he asserts that the trial court should have included a cautionary warning about witness bias, prejudice, and interest in its charge to the jury. Specifically, Appellant contends that he was harmed by the trial court's failure to sua sponte instruct the jury that Theony's testimony needed corroboration or greater scrutiny and suggests that a direct warning is necessary to alert jurors of the unreliable nature of "corrupt source" testimony.[7]

The court's charge instructed the jury to determine whether Theony was an accomplice as a matter of fact and the need for evidence to corroborate her testimony if it determined that she was. Appellant did not request any further instruction from the trial court. Although Appellant devotes thirty-odd pages of his brief to a discussion of the history of felon-witness testimony in the United States, he cites no authority requiring trial courts to submit the instruction he discusses on appeal. In fact, Appellant acknowledges that "Texas practice does not include such an instruction on witness bias, prejudice, or interest in the outcome of the case."

---

[7] Appellant describes Theony as a "memory-impaired, state-immunized Backpage prostitute . . . a prosecution-admitted unindicted co-conspirator and long-time Dave Bethel tag-along."

14

It is axiomatic that a trial judge may not single out certain testimony and comment on it. *Russell v. State*, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988). Likewise, the court's charge may not suggest that certain evidence is true or untrue or instruct the jury on the weight to be given certain testimony. *Id.* ("It has long been held that it is reversible error for the trial court to give instructions that refer to the credibility of the witnesses."). As Appellant acknowledges, Appellant's desired instruction is at odds with article 36.14 of the Texas Code of Criminal Procedure, which provides that the court's charge should not express any opinion as to the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. Therefore, we conclude that the trial court did not err in failing to direct the jury on how to assess Theony's testimony and we overrule this issue.

Issue 4A: Accomplice Witness Instruction Regarding Theony

In a subpart of Appellant's fourth issue, he claims that the trial court erred by submitting a "maybe" accomplice witness instruction regarding Theony instead of a "for sure" accomplice witness instruction. The charge read, "You must determine whether [Theony] is an accomplice to the crime of capital murder, if it was committed, or a lesser included offense of that crime. If you determine that [Theony] is an accomplice, you must then also determine whether there is evidence corroborating the testimony of [Theony]." Appellant made no objection to the paragraph submitted on the accomplice witness issue. Again, we review alleged jury charge error in a two-step process, first determining whether the charge contains error and then analyzing the error for harm. *Kirsch*, 357 S.W.3d at 649. Because Appellant did not object to the instruction he challenges on appeal, he must show egregious harm to be entitled to reversal. *Lozano v. State*, 636 S.W.3d 25, 29 (Tex. Crim. App. 2021).

15

A witness can be an accomplice as a matter of law or as a matter of fact. If a testifying witness is an accomplice as a matter of law, the trial court must instruct the jury accordingly, but if the evidence is conflicting, the jury must determine whether the witness is an accomplice as a matter of fact. *Biera v. State*, 280 S.W.3d 388, 394 (Tex. App.—Amarillo 2008, pet. ref'd) (citations omitted). Whether a defendant is entitled to an accomplice witness instruction is a function of the evidence produced at trial. *Ash*, 533 S.W.3d at 884. A witness is an accomplice as a matter of law when (1) the witness has been charged with the same offense as the defendant or a lesser-included offense, (2) the State charges the witness with the same or lesser-included offense as the defendant but dismisses the charges in exchange for the witness's testimony against the defendant, or (3) the evidence is uncontradicted or so one-sided that a reasonable juror could only conclude the witness was an accomplice. *Id.* Where the evidence presented by the parties is conflicting and it remains unclear whether the witness is an accomplice, the trial judge should allow the jury to decide whether the inculpatory witness is an accomplice witness. *Druery*, 225 S.W.3d at 498–99.

Theony was not charged with an offense in this case. While there was evidence showing that she lured Summers to the place where David was lying in wait, there was also evidence indicating that she did so under duress. Theony testified that David put a gun to her head and told her to get Summers to a place where David could "get him," or else she would end up "with that b**** in the lake." Theony initially told law enforcement that she did not expect the confrontation between David and Summers to end in murder, but rather just a fight or intimidation. However, she later testified that because of "the way Dave is," she "could have gathered" that Summers was going to die.

16

For the evidence to raise a witness's culpability as a party, it must show the witness acted "with intent to promote or assist the commission of the offense" with which the defendant is charged. TEX. PENAL CODE ANN. § 7.02(a)(2). This requires a showing that the witness "harbored the specific intent to promote or assist the commission of the offense . . . ." *Pesina v. State*, 949 S.W.2d 374, 382 (Tex. App.—San Antonio 1997, no pet.). A person acts with intent with respect to the nature of her conduct or to a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result. *See* TEX. PENAL CODE ANN. § 6.03(a). Therefore, in order to be an accomplice, Theony had to have had the conscious desire to promote or assist the commission of the offense.

The evidence does not conclusively establish that Theony harbored the necessary *mens rea*. Further, Theony was not indicted for any offense. Thus, she was not an accomplice as a matter of law. The trial court did not err in allowing the jury to determine whether Theony was an accomplice witness as a matter of fact. *Druery*, 225 S.W.3d at 498–99. Because we conclude there was no error, we need not conduct a harm analysis. We overrule issue 4A.

Issue 4B: Error in Statement Regarding Corroboration

In the final subpart of Appellant's fourth issue, he claims that the court's charge misstated the law on accomplice testimony, confusing the jury and resulting in an unreliable verdict. As discussed above, the charge included an unobjected-to accomplice witness instruction directed at the testimony of David, who refused to testify when called to the stand. The jury was instructed that Appellant "cannot be convicted on the testimony of David Bethel a/k/a Dave Bethel unless the testimony is corroborated." Appellant

contends that the instruction in this case likely caused more confusion than clarity, because it "impugned and discredited all of Dave Bethel's out of court statement, even the part that tended to exonerate [Appellant]."

The accomplice witness instruction, derived from article 38.14 of the Texas Code of Criminal Procedure, "does not apply to out-of-court statements but, rather, live testimony of an accomplice at trial." *Tidrow v. State*, No. 07-19-00396-CR, 2020 Tex. App. LEXIS 4666, at *4 (Tex. App.—Amarillo June 23, 2020, no pet.) (mem. op.) (not designated for publication); *see also Bingham v. State*, 913 S.W.2d 208, 210 (Tex. Crim. App. 1995) (op. on reh'g) (en banc). Because David did not provide live testimony at trial, the accomplice witness instruction was unnecessary.[8] Assuming that inclusion of the superfluous instruction was erroneous, because no objection was raised at trial, reversal is required only if the error was so egregious and created such harm that Appellant did not have a fair and impartial trial. *Marshall*, 479 S.W.3d at 843.

Generally, an accomplice witness instruction regarding David's testimony would benefit Appellant by requiring additional corroborating evidence that would not otherwise be required. *Druery*, 225 S.W.3d at 497–98. Here, Appellant suggests that the instruction was harmful because jurors could have understood it to mean that additional corroborating evidence was necessary for all of David's out-of-court statement, including portions that were helpful to Appellant.

---

[8] David answered only two questions on the witness stand. Both were directed at him by the trial court. The first confirmed his understanding that he could be held in contempt if he refused to answer questions posed by the attorneys, and the second confirmed that it was still his intent to refuse to answer questions.

First, we note that the instruction specifically references David's testimony, not his out-of-court statement. Thus, on its face, the instruction does not indicate that David's out-of-court statement requires corroboration. Appellant has not directed us to any evidence in the record that the jury was confused by the instruction, and we presume the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

Second, the language of the instruction concerns only the use of David's testimony to convict Appellant. It directs the jury that it "cannot convict [Appellant] on the testimony of David Bethel a/k/a Dave Bethel" unless there is evidence corroborating David's testimony. The instruction does not bear upon the use of David's testimony to acquit Appellant. *See, e.g.*, *McAfee v. State*, 204 S.W.3d 868, 879–80 (Tex. App.—Corpus Christi 2006, pet. ref'd) (Yanez, J., dissenting) (en banc) ("Courts have acknowledged that the purpose of the corroboration requirement in article 38.14 is to ensure that a conviction rests upon more than just the testimony of an accomplice . . . ." ); *see also Ramirez v. State*, No. 01-08-00535-CR, 2010 Tex. App. LEXIS 4365, at *24 (Tex. App.— Houston [1st Dist.] June 10, 2010, pet. ref'd) (mem. op., not designated for publication) ("[T]he accomplice-witness rule protects the interests of the defendant by requiring the State to bring additional evidence connecting the defendant with the offense committed.").

The instruction, even if erroneous, did not usurp the jury's role "to judge for itself the credibility of the evidence and the soundness of the arguments presented." *Jester v. State*, 62 S.W.3d 851, 855–56 (Tex. App.—Texarkana 2001, pet. ref'd). Appellant has not shown, and we cannot conclude, that he suffered egregious harm.

Finally, to the extent that Appellant's issue 4B also encompasses the argument that the trial court should have provided a cautionary warning about witness bias, prejudice, and interest with regards to "corrupt source" David's testimony, we reject Appellant's argument. As set forth in our analysis of issue 4, such an instruction is incompatible with article 36.14's mandate that the court's charge should not express any opinion as to the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *see also Russell*, 749 S.W.2d at 78 (it is reversible error for trial court to give instructions that refer to credibility of witnesses). We overrule Appellant's fourth issue in its entirety.

## CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.


Judy C. Parker
Justice


Publish.

20